RECORD NO. 14-1118

In The

# United States Court of Appeals

### For The Fourth Circuit

# BRIAN C. BAKER,

*Plaintiff – Appellant*,

**v.**

# BANK OF AMERICA, N. A., successor in interest to Countrywide Bank FSB; US BANK NATIONAL ASSOCIATION, as trustee for the benefit of the LXS 2007-16N trust fund; SPECIALIZED LOAN SERVICING LLC,

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

―――――――

### BRIEF OF APPELLANT

―――――――

James C. White
Michelle M. Walker
LAW OFFICE OF JAMES C. WHITE, PC
Post Office Box 16103
Chapel Hill, North Carolina  27516
(919) 246-4676

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. <u>14-1118</u>        Caption: <u>Brian C. Baker v. Bank of America, N.A., et al</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Brian C. Baker</u>
(name of party/amicus)

_____

 who is <u>appellant</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.     Does party/amicus have any parent corporations?                ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent
       corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                          ☐ YES ☑ NO
       If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ James C. White                              Date: _____02/24/2014_____

Counsel for: Appellant Brian C. Baker

## CERTIFICATE OF SERVICE
****************************

I certify that on _____02/24/2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ James C. White _____                              _____02/24/2014_____
(signature)                                                                        (date)

- 2 -

# I. TABLE OF CONTENTS

**Page**

II.   TABLE OF AUTHORITIES ........................................................................iv

III.  STATEMENT OF SUBJECT MATTER AND
      APPELLATE JURISDICTION ...................................................................1

IV.   STATEMENT OF THE ISSUES ..................................................................1

V.    STATEMENT OF THE CASE ......................................................................1

    A.   Countrywide presents Mr. Baker with a Good Faith Estimate
           for a loan that is acceptable to him.....................................................2

    B.   Countrywide substitutes a different document at closing ....................2

    C.   Mr. Baker decides to rescind ...............................................................3

    D.   Mr. Baker sends, and Countrywide receives, timely notice of
           rescission .............................................................................................3

    E.   Countrywide ignores the rescission and disburses funds anyway ........4

    F.   Countrywide refuses Mr. Baker's effort to tender the funds
           back to them .........................................................................................4

    G.   Mr. Baker is forced into bankruptcy and his personal obligation
           under the loan is discharged ................................................................5

    H.   Bank of America continues to refuse to cancel the Deed of
           Trust of record .....................................................................................5

VI.   SUMMARY OF THE ARGUMENT .............................................................6

VII.    ARGUMENTS ............................................................................7

1.    STANDARD OF REVIEW ..................................................7

2.    DISCUSSION OF THE ISSUES .........................................7

A.    THE TRIAL COURT ERRED IN DISMISSING
APPELLANT'S COMPLAINT ON STATUTE OF
LIMITATIONS GROUNDS .....................................7

i.    Because Mr. Baker's rescission was automatic and
self-executing, Appellees' security interest is void
as a matter of law ...........................................8

a.    Under the plain language of 15 U.S.C.
§ 1635, Appellees' security interest became
void two days after closing—any other
result would require this Court to improperly
rewrite the statute ...............................11

b.    Those courts that have analyzed the factual
situation presented in this case have
consistently found the applicable security
interest to be void ...............................14

c.    The District Court incorrectly applied the
plain language of the statute to reach the
opposite result......................................18

ii.    Even if the Court determines that a lawsuit is
required to void Appellees' security interest, this
Court's decision in *Gilbert* requires the conclusion
that this suit was timely .................................22

B.    BECAUSE APPELLANT'S CLAIMS FOR
RESCISSION AND TO QUIET TITLE ARE TIMELY,
THE DISTRICT COURT HAS JURISDICTION OVER
HIS STATE LAW CLAIM......................................25

VIII.  CONCLUSION............................................................................27

IX.   ADDENDUM

X.    CERTIFICATE OF COMPLIANCE

XI.   CERTIFICATE OF FILING AND SERVICE

# II. TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Mortgage Network, Inc. v. Shelton*,
    486 F.3d 815 (4th Cir. 2007) ..................................................................*passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................7

*Beach v. Ocwen Federal Bank*,
    523 U.S. 410 (1998)......................................................................................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................7

*Bradford v. HSBC Mortg. Corp.*,
    838 F. Supp. 2d 424 (E.D. Va. 2012) ....................................................12, 13

*Causey v. U.S. Bank Nat. Ass'n*,
    464 Fed. Appx. 634 (9th Cir. 2011) ............................................................14

*Ford Motor Credit Co. v. Milhollin*,
    444 U.S. 555 (1980)......................................................................................20

*Gilbert v. Residential Funding LLC*,
    678 F.3d 271 (4th Cir. 2012) ...............................................................*passim*

*Large v. Conseco Fin. Servicing Corp.*,
    292 F.3d 49 (1st Cir. 2002)...........................................................................12

*McKenna v. First Horizon Home Loan Corp.*,
    475 F.3d 418 (1st Cir. 2007)...................................................................11, 13

*Poore v. Swan Quarter Farms, Inc.*,
    79 N.C. App. 286 (N.C. App. 1986)..............................................................18

*WMC Mortg. LLC v. Baker*,
    No. 10–3118, 2012 WL 628003 (E.D. Pa. 2012) ...................................*passim*

*Yamamoto v. Bank of New York*,
    329 F.3d 1167 (9th Cir. 2003) ...............................................................12, 14

**STATUTES**

15 U.S.C. § 1601, *et seq.*...........................................................................1, 6

15 U.S.C. § 1635.....................................................................................*passim*

15 U.S.C. § 1635(a) ...............................................................................*passim*

15 U.S.C. § 1635(b) ...............................................................................*passim*

15 U.S.C. § 1635(f)....................................................................9, 23, 24, 25

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

28 U.S.C. § 1367 .........................................................................................26

28 U.S.C. § 1367(a) ....................................................................................26

28 U.S.C. § 1367(c)(3).................................................................................26

N.C. Gen. Stat. § 1-47(2) ...........................................................................26

**RULE**

Fed. R. Civ. P. 12(b)(6)...............................................................................26

**REGULATIONS**

12 C.F.R. § 1026.23(a)(2) ...........................................................................23

12 C.F.R. § 1026.23(c).................................................................................16

12 C.F.R. pt. 226, Supp. I ¶ 23(c)(4) ....................................................16

12 C.F.R. pt. 226, Supp. I ¶ 23(d)(1) ....................................................20

12 C.F.R. pt. 226, Supp. I ¶ 23(d)(4) ....................................................22

### III. STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The United States District Court for the Eastern District of North Carolina has original jurisdiction of all civil actions arising under the laws of the United States pursuant to 28 U.S.C. § 1331.  Appellant Brian C. Baker filed a Complaint asserting claims arising under the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*, on February 7, 2013.  (JA at 5).  The District Court entered final judgment dismissing Appellant's Complaint on January 27, 2014.  (JA at 62).  On February 10, 2014, Appellant filed a timely Notice of Appeal from entry of final judgment. (JA at 63).  The United States Court of Appeals for the Fourth Circuit has jurisdiction to hear Appellant's appeal from final judgment pursuant to 28 U.S.C. § 1291.

### IV. STATEMENT OF THE ISSUES

I.      WHETHER THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S COMPLAINT ON STATUTE OF LIMITATIONS GROUNDS.

II.     WHETHER THE DISTRICT COURT HAS JURISDICTION OVER APPELLANT'S STATE LAW CLAIM.

### V. STATEMENT OF THE CASE

In or around February of 2005, Appellant Brian C. Baker ("Mr. Baker") purchased a home in Wake Forest, North Carolina (the "Home").  To purchase the Home, Mr. Baker received a loan from Bank of America, N.A. ("Bank of

1

America") in the principal amount of $569,600.00 to be paid over 30 years at a fixed interest rate of 5.625%, resulting in a monthly payment of approximately $3,278.94 toward principal and interest (the "Existing Loan").  (JA at 7).

### A.    Countrywide presents Mr. Baker with a Good Faith Estimate for a loan that is acceptable to him.

In or around May of 2007, Mr. Baker applied to Countrywide Bank, FSB ("Countrywide") for a second mortgage, but was told by a Countrywide representative that a new North Carolina law required the he also take out a loan to refinance the Existing Loan.  Countrywide presented to Mr. Baker a Good Faith Estimate dated May 25, 2007 (the "May 25 GFE") setting out a proposed refinance in the principal amount of $645,337.00 to be paid over 30 years at a fixed interest rate of 4.875%, resulting in a monthly payment of $3,415.18.  (JA at 8, 18).  The Truth-In-Lending Disclosure Statement accompanying the May 25 GFE (the "May 25 TIL Disclosures") set out an annual percentage rate of 4.89% and a finance charge of $585,217.75.  (JA at 8, 19).

### B.    Countrywide substitutes a different document at closing.

At closing on June 13, 2007, however, Countrywide substituted a note with completely different terms that Mr. Baker had never seen before.  The note Countrywide presented at closing for Mr. Baker's signature (the "Note") was an adjustable rate note in the principal amount of $640,000.00.  (JA at 8, 21).  The Truth-In-Lending Disclosure Statement presented at closing (the "Closing TIL

2

Disclosures") set out an annual percentage rate of 7.616% and a finance charge of $1,239,744.14—more than double the amount set out in the May 25 TIL Disclosures. (JA at 8, 26).

It appears that Countrywide fraudulently swapped the terms of the May 25 GFE with an adjustable rate note at closing in a bait-and-switch intended to induce Mr. Baker to agree to a significantly higher interest rate.

### C. Mr. Baker decides to rescind.

Mr. Baker reluctantly proceeded with the closing on June 13, 2007, including by executing a Deed of Trust securing payment of the Note (the "Deed of Trust"), but raised concerns about the terms presented in the closing documents. After comparing the closing documents with the May 25 GFE and the terms of his existing loan and determining that the Note Countrywide presented at closing carried an interest rate nearly 2% higher than his existing loan and 2.73% higher than what was promised, Mr. Baker took immediate action to rescind the June 13, 2007 transaction. (JA at 9).

### D. Mr. Baker sends, and Countrywide receives, timely notice of rescission.

On Friday, June 15, 2007—the second business day after the closing and within the three-day rescission period provided by 15 U.S.C. § 1635(a)—Mr. Baker mailed a signed rescission notice and accompanying letter (the "Rescission Notice") to the address designated by Countrywide in the Notice of Right to

3

Cancel document provided to Mr. Baker at the June 13, 2007 closing.  (JA at 9, 28-29).  Countrywide received Mr. Baker's Rescission Notice on Monday, June 18, 2007, the third business day after the June 13, 2007 closing (which fell on a Wednesday).  (JA at 9, 30).

### E.    Countrywide ignores the rescission and disburses funds anyway.

Even though it received Mr. Baker's Rescission Notice within the three-business-day period provided in 15 U.S.C. § 1635(a), on June 18, 2007—the same day it received Mr. Baker's Rescission Notice—Countrywide authorized disbursement of the proceeds of the loan described in the June 13, 2007 closing to Bank of America to pay off Mr. Baker's existing loan and recorded the accompanying Deed of Trust.  Even after multiple subsequent requests by Mr. Baker, Countrywide refused to unwind the transaction by cancelling the Deed of Trust presented at the June 13, 2007 closing or attempting to retrieve the disbursed proceeds from Bank of America.  (JA at 10, 31).  Faced with Countrywide's refusal, Mr. Baker began making payments on the Note, noting that he only made payments to maintain his credit and avoid foreclosure.  (JA at 10, 32).

### F.    Countrywide refuses Mr. Baker's effort to tender the funds back to them.

After months of attempting to get Countrywide to unwind the transaction, in March of 2008, Mr. Baker applied to First Citizens Bank for a loan in the amount of $640,000.00 in an effort to repay the proceeds disbursed by Countrywide.

Countrywide wrongfully refused to accept repayment of the loan proceeds, instead demanding an additional amount of approximately $7,000.00 as a pre-payment penalty.  (JA at 10).

### G.    Mr. Baker is forced into bankruptcy and his personal obligation under the loan is discharged.

Ultimately, Appellee Bank of America (successor to Countrywide and servicer at the time) instituted foreclosure proceedings under the rescinded loan that forced Mr. Baker to file bankruptcy to save his home.  In his bankruptcy case, Mr. Baker opposed the Bank's motion for relief from the automatic stay seeking to proceed with foreclosure of his Home on grounds that he had properly rescinded the loan, and the Bank withdrew its motion.  (JA at 11).  Mr. Baker received a discharge in his bankruptcy case on July 29, 2010 that discharged his personal obligations under the Note.  (JA at 12, 35).

### H.    Bank of America continues to refuse to cancel the Deed of Trust of record.

In April of 2012, Bank of America again attempted to foreclose on Mr. Baker's home based on the rescinded and discharged loan.  In letters dated June 23, 2011, April 19, 2012, and June 7, 2012, Bank of America, through counsel, refused to cancel or mark satisfied the Deed of Trust without receiving payment of the proceeds of the Note, which was discharged in Mr. Baker's bankruptcy.  (JA at 12).

Based on the foregoing facts, Mr. Baker filed a Complaint asserting claims arising under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and for breach of the duty of good faith and fair dealing on February 7, 2013. (JA at 5). Appellees filed a Motion to Dismiss Appellant's Complaint on April 4, 2013. (JA at 42).

On January 27, 2014, the District Court entered an Order and Judgment granting Appellees' Motion to Dismiss and dismissing Mr. Baker's Complaint. (JA at 45-62). The District Court found that a borrower exercising a right to rescind a consumer credit transaction within three business days of closing must file a lawsuit to complete rescission, and that Mr. Baker's Complaint was untimely filed even though he gave notice of rescission within three days after closing. (JA at 56, 58-59). Based on its dismissal of Mr. Baker's federal claims, the District Court declined to extend supplemental jurisdiction to Mr. Baker's state law claim for breach of the duty of good faith and fair dealing. Mr. Baker filed a timely Notice of Appeal on February 10, 2014. (JA at 63).

## VI. SUMMARY OF THE ARGUMENT

The trial court erred in dismissing Mr. Baker's Complaint on grounds that it was filed outside of the applicable limitations period. First, Mr. Baker's claim to quiet title is not late-filed because the security interest reflected in the Deed of Trust became void upon Mr. Baker's mailing the Notice of Rescission within three business days after closing. Second, even if a lawsuit were necessary to complete

rescission under TILA's automatic rescission provision, Mr. Baker timely

exercised his right to rescind by mailing the Notice of Rescission within three

business days after closing. The District Court's holding that the lawsuit to

enforce rescission is the action considered for limitations purposes directly

contradicts this Court's holding in *Gilbert v. Residential Funding LLC*, 678 F.3d

271, 277 (4th Cir. 2012). Because Mr. Baker's federal claims must survive, the

District Court has supplemental jurisdiction over his state law claim.

## VII. ARGUMENTS

## 1.    STANDARD OF REVIEW

This Court reviews a district court's decision granting a motion to dismiss *de

novo*, and views the facts in the light most favorable to the non-prevailing party.

*Gilbert*, 678 F.3d at 274. "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## 2.    DISCUSSION OF THE ISSUES

### A.    THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S COMPLAINT ON STATUTE OF LIMITATIONS GROUNDS.

The District Court posed and answered two questions to arrive at its

conclusion that Mr. Baker's claims are time-barred. First, "if a borrower sends

notification of rescission within the three-day statutory cooling-off period and the

creditor does not acknowledge the notice, must the borrower file a lawsuit to complete the rescission process?" (JA at 50). Second, "what statute of limitation, if any, applies?" (JA at 50).

The Fourth Circuit has not yet had an opportunity to consider the answer to the first question, but other courts that have considered the question have held that a notice sent within three days of closing (TILA's "cooling off period") immediately voids any security interest resulting from the transaction. As to the second question regarding the applicable statute of limitations, the Fourth Circuit has recently answered that question in its *Gilbert* decision, and the District Court's holding directly contradicts that decision.

i.    Because Mr. Baker's rescission was automatic and self-executing, Appellees' security interest is void as a matter of law.

Because the facts of this case are so unique, it is essential to distinguish two materially different types of rescission under TILA to analyze the applicable law.

Automatic Rescission, which is at issue here, gives a borrower an absolute, unconditional right to rescind a loan secured by his principal residence within three days of closing during a statutory "cooling off" period:

> [I]n the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation

8

of the transaction . . . by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so.

15 U.S.C. § 1635(a).

The second kind of rescission is Extended Rescission, which is not at issue in this case. Extended Rescission arises under sections 1635(a) and 1635(f). Section 1635(a) provides that "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction **or** the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later." *Id.* (emphasis added). Section 1635(f) states that this type of rescission (which extends rescission rights beyond the third business day in those cases where proper notice is not given at closing) "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." Section 1635(f). Unlike Automatic Rescission, Extended Rescission requires a determination that material disclosures were not provided to the borrower.

Section 1635(b) sets out default procedures for unwinding a loan transaction when a borrower exercises his right to rescind: "When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes **void** upon such a rescission." 15

9

U.S.C. § 1635(b) (emphasis added).  The statute requires a lender to take steps to unwind the transaction first, including dealing with any funds that flowed from the borrower to the creditor: "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."  *Id.* (emphasis added).

The statute also provides a means for dealing with funds that flow from the creditor to the borrower:  "If the creditor has delivered any property to the obligor, the obligor may retain possession of it."  *Id.*  "Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value."  *Id.*  "If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it."  *Id.* (emphasis added).

By sending the Rescission Notice within three business days after closing, Mr. Baker exercised his absolute right to rescind during the "cooling off" period provided by section 1635(a).  "The consumer's right to rescind during the first three business days after the loan closing is unconditional; the consumer may

10

rescind the loan 'for any reason or for no reason.'" *WMC Mortg. LLC v. Baker*, No. 10–3118, 2012 WL 628003 at *9 (E.D. Pa. 2012) (quoting *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 421 (1st Cir. 2007)).

While this Court has addressed the procedures for enforcement of Extended Rescissions exercised more than three days after closing in *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007), enforcement of a properly exercised absolute right to rescind within the three-day cooling off period appears to be a matter of first impression in this Circuit. In its Order, the District Court noted that "the case law addressing the effect of a notice of rescission sent within the three-day period is exceedingly sparse." (JA at 51). *See also WMC Mortg.*, 2012 WL 628003 at *12, *14 (noting that "case law addressing the consequences of a consumer's exercise of the right to rescind within the initial three-day 'cooling off' period is sparse" and that "the vast majority of cases—and virtually all of the appellate cases—addressing this issue involve a consumer's exercise of the right to rescind beyond the initial three-day cooling off period.").

> **a.    Under the plain language of 15 U.S.C. § 1635, Appellees' security interest became void two days after closing—any other result would require this Court to improperly rewrite the statute.**

Under the plain language of the statute, a security interest is void immediately upon notice of rescission unless otherwise ordered by a court. *See* 15 U.S.C. § 1635(b) ("The procedures prescribed by this subsection shall apply except

when otherwise ordered by a court.").  In the case of Extended Rescissions (which require a lender's failure to make material disclosures and can occur years after closing), some courts, including this Court, have altered the statutory framework to condition cancellation of the security interest upon the borrower's repayment of any loan proceeds.  The logic for this is clear, since "'[o]therwise, a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any.'"  *Shelton*, 486 F.3d at 821 (quoting *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003)).  The *Shelton* court further explained, "The natural reading of [§ 1635(b)] is that the security interest becomes void when the obligor exercises a right to rescind that <u>is available</u> in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined."  *Id.* (quoting *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)) (emphasis added).

Any concern about abusive borrowers cannot and does not arise in the case of an absolute and unconditional right to rescind during the three-day cooling off period.  *See Bradford v. HSBC Mortg. Corp.*, 838 F. Supp. 2d 424, 428-29 (E.D. Va. 2012); *WMC Mortg.*, 2012 WL 628003 at *9.  The logic from *Shelton* is not even relevant here.  Mr. Baker exercised his absolute right to rescind during the three-day cooling off period.  The availability of the right to rescind in those three

12

days is not subject to any determination by a creditor or a court as to whether any

TILA violations have occurred—it is mandatory.

One court in this Circuit that has looked at this issue recognized that the

logic of *Shelton* does not extend to Automatic Rescissions made within the three-

day cooling off period.  In *Bradford v. HSBC Mortg. Corp.*, 838 F. Supp. 2d 424

(E.D. Va. 2012), the District Court for the Eastern District of Virginia, in deciding

a case involving an Extended Rescission, made clear: "the conclusion reached

here—that a borrower's notice of rescission does not itself require the lender to

rescind under § 1635—<u>applies only where, as here, the notice is sent outside of</u>

<u>TILA's 'three-day cooling-off period' that begins after the closing of the</u>

<u>transaction</u>."  *Id.* at 428-29 (emphasis added); see also *McKenna*, 475 F.3d at 421.

"This is so because, by default, a borrower has a <u>vested</u> right to rescind until

'midnight of the third business day following the consummation of the

transaction.'" *Id.* (quoting 15 U.S.C. § 1635(a)) (emphasis added).  The court

specifically noted that its conclusion "does not extend to cases in which the

borrower sends a rescission notice within the initial three-day period, as the right to

rescind in such cases is not contingent on the borrower's demonstration that the

required TILA disclosures were not given at closing." *Id.*

**b.    Those courts that have analyzed the factual situation presented in this case have consistently found the applicable security interest to be void.**

Both the Ninth Circuit and the Eastern District of Pennsylvania have concluded that the default procedures of section 1635(b) apply when a borrower rescinds within the three-day cooling off period and that the creditor's security interest is immediately and automatically void. *See Causey v. U.S. Bank Nat. Ass'n*, 464 Fed. Appx. 634, 635 (9th Cir. 2011); *WMC Mortg.*, 2012 WL 628003 at *16.

In *Causey*, it was undisputed that the plaintiff effectively invoked his absolute right to rescind the transaction within three business days of the loan closing. *Causey*, 464 Fed. Appx. at 635. It was also undisputed that the lender ignored the plaintiff's rescission notice and proceeded to fund the loan. *Id.* The court concluded that a notice of rescission sent within three days after closing was sufficient to accomplish rescission (and require application of the default sequence) under the standard set forth in *Yamamoto*, which this Court followed in *Shelton*. *Id.*

The Ninth Circuit's decision is important because it recognized a limit to the kind of statutory modification that occurred in *Shelton*. "Although the district court is authorized to modify the default sequence, that authority ends once rescission is accomplished." *Id.* at 635 (emphasis added). Based on this analysis,

14

the court held that the district court had erred in denying rescission based on the consumer's inability to tender and remanded the case with instructions to "order that the defendant release its lien on the plaintiff's home and determine the amount that the plaintiff must then tender to the defendant." *Id.* (also noting that plaintiff's previous attempted tender could impact the repayment amount).

The facts in *WMC Mortgage* are remarkably similar to the facts of this case. *WMC Mortgage* "concerns the consequences of a lender's failure to honor a borrower's timely exercise of the right to rescind a mortgage refinancing loan under [TILA] more than six years ago." *WMC Mortg.*, 2012 WL 628003 at *1. The borrowers (also named Baker) rescinded the loan in question by sending a rescission notice to the lender within three business days of the loan closing, as permitted under TILA. *Id.* The lender received the rescission notice, but proceeded to fund the loan anyway and then sold it to a third party. *Id.* The new holder pursued a foreclosure action, which the borrowers defended on the basis that the loan had been rescinded. *Id.*

In *WMC Mortgage*, the court applied the default procedures of section 1635 and held that a notice of rescission sent on the third day after closing (and five years before suit was filed) effectively rescinded the transaction, voiding the security interest. *Id.* at *16 ("Because the [borrowers] exercised their unconditional right to rescind the loan within the first three business days

15

following the loan closing, and because modification of TILA's rescission provisions is not warranted, [the lender's] security interest in the [borrowers'] property is void."). "So long as the notice is timely, <u>the creditor has no discretion not to honor it</u> because the consumer may rescind for any reason or for no reason." *Id.* at *14 (quotation marks and citation omitted, emphasis added).

The court went on to note that "[i]n fact, to ensure rescission within this three-day period is honored, Regulation Z [which implements TILA] places the burden on the creditor to ensure a loan has not been rescinded before disbursing the loan proceeds." *Id.* Under Regulation Z, "[u]nless a consumer waives the right of rescission . . . no money shall be disbursed other than in escrow . . . until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded." 12 C.F.R. § 1026.23(c). "A creditor may satisfy itself a consumer has not rescinded by either '[w]aiting a reasonable time after expiration of the rescission period to allow for delivery of a mailed notice' or '[o]btaining a written statement from the consumer that the right has not been exercised.'" *WMC Mortg.*, 2012 WL 628003 at *14 (quoting 12 C.F.R. pt. 226, Supp. I ¶ 23(c)(4)).

The *WMC Mortgage* court found that the lender's disbursement of loan proceeds despite the borrower's timely notice of rescission on the third day after closing—exactly what Countrywide did here—was a "particularly egregious"

violation of TILA and its implementing regulations that warranted cancellation of the lender's security interest before tender of the proceeds. *Id.* at *15. The court noted that the premature disbursement "placed the [borrowers] in a position in which they could not unwind the transaction on their own because they had no control over the bulk of the loan proceeds, which had been disbursed directly to their prior mortgage and home equity lenders." *Id.* This lead the court to conclude that "[p]ermitting a creditor to ignore a timely three-day rescission notice and still obtain the benefit of equitable modification of TILA's rescission procedures would effectively eliminate the cooling off period for consumers without easy access to alternative funding, and would eviscerate the effectiveness of rescission as an enforcement tool." *Id.*

Here, not only did Mr. Baker timely mail his Rescission Notice on the second day after closing, but a return receipt shows that Countrywide received notice on the third business day and proceeded to disburse the loan proceeds on that day (before the cooling off period even expired) anyway in direct violation of Regulation Z. (JA at 9-10). Granting Appellees equitable relief from the plain language of section 1635 under these circumstances would simply reward their bad acts and, like the Bakers in Pennsylvania, it would effectively eliminate Mr. Baker's absolute statutory right of rescission within three business days of closing.

Accordingly, under the provisions of section 1635, Mr. Baker properly rescinded the loan transaction, Appellees' security interest in his property is void, and Mr. Baker's claims for a judicial declaration of that fact (styled both as TILA rescission and a separate action to quiet title) are timely. Under North Carolina law, "no statute of limitations runs against plaintiffs bringing actions for removal of a cloud upon title" because "[s]uch action is a continuing right which exists as long as there is an occasion for its exercise." *Poore v. Swan Quarter Farms, Inc.*, 79 N.C. App. 286, 290, 338 S.E.2d 817, 819-20 (N.C. App. 1986) (quotation marks and citation omitted).

The security interest retained by Appellees at the June 13, 2007 closing became void two days later when Mr. Baker mailed the Notice of Rescission. The recorded Deed of Trust has been a cloud on Mr. Baker's title ever since, and no statute of limitations bars Mr. Baker from seeking judicial action to remove that cloud on title.

> **c. The District Court incorrectly applied the plain language of the statute to reach the opposite result.**

Despite acknowledging that "the distinction makes more sense in the context of the extended right of rescission," the District Court concluded that Appellees' security interest was not voided upon Mr. Baker's mailing the Notice of Rescission, but rather required judicial determination because of a purported

18

distinction in the statute between the <u>exercise</u> of a <u>right to rescind</u> and complete <u>rescission</u>.  (JA at 51-52).

The District Court relied on the first sentence of section 1635(b) to support its conclusion: "When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission."  15 U.S.C. § 1635(b); (JA at 51).  According to the court's analysis, the phrase "exercises his right to rescind" in the first part of the sentence refers to a distinct event than the phrase "such a rescission" in the last part of the sentence.  (JA at 51).  That distinction not only contorts the plain language of the statute, it also has been squarely rejected by the Federal Reserve Board's Official Commentary on TILA, which the District Court cited favorably in its Order.  (JA at 55).

Judicial interpretation of statutes and regulations begins with the plain meaning of the text of the statute.  *Gilbert*, 678 F.3d at 276.  Inclusion of the word "such" in the second half of the sentence indicates that the second instance of the word "rescission" refers back to the first instance of the word in the phrase "exercises his right to rescind."  When the statute says that the relevant security interest becomes void "upon *such* a rescission," it must be referring to something (otherwise the inclusion of the word "such" would be meaningless), and the

obvious reference is to the rescission mentioned earlier in the sentence, namely, when a borrower "exercises his right to rescind."

The Federal Reserve Board's Official Commentary supports this conclusion. Paragraph 23(d)(1) on the topic of "Effects of rescission" states "[a]ny security interest giving rise to the right of rescission becomes void when the consumer **exercises** the **right** of rescission." 12 C.F.R. pt. 226, Supp. I ¶ 23(d)(1). That paragraph goes on to make clear that "[t]he security interest is <u>automatically negated</u> regardless of its status and whether or not it was recorded or perfected." *Id.* As the District Court noted, this Commentary "binds the court unless found to be 'demonstrably irrational.'" (JA at 55). *See also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980).

The plain language of the statute and the Federal Reserve Board's Commentary clearly contemplate that under certain circumstances, a security interest becomes automatically void upon a borrower mailing a notice of rescission. While courts have the authority under the statute to alter the procedures set out in section 1635(b)—and this Court has understandably done so when the <u>availability</u> of a right to rescind is subject to interpretation—altering the effect of the statutory language in the context of a right of rescission exercised in the three-day cooling off period would completely rewrite the statute and eviscerate the

20

availability of consumers' absolute right to rescind a transaction within three days of closing.

A decision from this Court determining that a borrower must bring a lawsuit to complete a rescission exercised in the three day cooling off period would send an unfortunate message to lenders—namely that there is a strong incentive for lenders to ignore TILA regulations that require them to delay disbursement until they are satisfied that the borrower has not rescinded. Enforcement of TILA would be shifted to borrowers, many of whom would not have the financial means to front the costs of a federal lawsuit. Because there would no longer be an automatic right of rescission under TILA, lawsuits such as this would become the only real way for consumers to exercise the right of rescission that Congress granted to them by enacting TILA.

On the other hand, a decision by this Court reaffirming the absolute right to rescind under TILA tells lenders that they risk losing their security interest if they do not respect that absolute right to rescind in the cooling off period. There is a reason that lawsuits like this one are few and far between (as the lack of relevant case law suggests); that is because for the most part lenders respect borrowers' right to rescind and do not violate TILA regulations by disbursing too early. But that could change if lenders believe that borrowers would have to bring a federal lawsuit to enforce a rescission in the cooling off period and void the resulting

21

security interest. Lenders may be willing to play the odds, and these now necessary lawsuits to enforce such rescissions would become significantly more frequent. Not only would that eviscerate the rights Congress granted to borrowers, it would also waste judicial resources in enforcing rights that are clear and not contestable.

The natural reading of section 1635 requires the conclusion that Appellees' security interest became void when Mr. Baker exercised his right to rescind by mailing the Notice of Rescission on the second day after closing.[1] *See Gilbert*, 678 F.3d at 277 (finding "a borrower exercises her right of rescission by merely communicating in writing to her creditor her intention to rescind"). Mr. Baker's claims to clear the cloud on his title are thus timely.

> ii. Even if the Court determines that a lawsuit is required to void Appellees' security interest, this Court's decision in *Gilbert* requires the conclusion that this suit was timely.

Even if the Court agrees with the District Court's conclusion that a lawsuit is necessary to complete a rescission exercised within the three-day "cooling off period," applying this Court's analysis in *Gilbert* to the facts of this case requires the conclusion that Mr. Baker's Complaint was timely filed because he notified

---

[1] To the extent that this Court may consider whether an allegation of ability to repay the loan proceeds is necessary to state a claim, Mr. Baker's previous attempt to tender the proceeds and his bankruptcy discharge preclude such an allegation. (JA at 10, 33); *see also* 12 C.F.R. pt. 226, Supp. I ¶ 23(d)(4) (noting that a consumer in bankruptcy proceedings is prohibited from returning anything to the creditor, but that does not affect a consumer's substantive right to rescind).

Countrywide of his rescission within three days after the transaction, much sooner than the three-year statute of limitations.

In *Gilbert*, this Court held that a borrower timely exercises his or her right to rescind under section 1635 by <u>notifying</u> the creditor of the intention to do so—a borrower is not required to file a lawsuit. *Gilbert*, 678 F.3d at 277. To reach that conclusion, the Court reviewed the language of section 1635(f) as well as its implementing regulation, Regulation Z, which states:

> To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

12 C.F.R. § 1026.23(a)(2). As the Court put it: "Simply stated, neither 15 U.S.C. § 1635(f) nor Regulation Z says anything about the filing of a lawsuit, and we refuse to graft such a requirement upon them." *Id.*

In finding that the *Gilbert* plaintiffs' claim for rescission was timely, the Court made clear that the relevant act for determining timeliness of exercising a right of rescission is sending notification to the creditor, <u>not</u> the filing of a lawsuit:

> In other words, the three-year limitation in 15 U.S.C. § 1635 concerns the extinguishment of the right of rescission and does not require borrowers to file a claim for the invocation of that right. Thus, <u>that the [plaintiffs] failed to seek enforcement of their right to rescind within the three years does nothing to take away from the fact that they exercised their right of rescission within that time period</u>.

*Id.* at 277-78 (emphasis added).

23

Here, Mr. Baker timely exercised his right to rescind by notifying Countrywide two days after closing—within the three day "cooling off period" in which he could rescind for any reason or no reason at all, and well within the three-year statute of limitations contained in section 1635(f). The District Court's holding that Mr. Baker was required to file suit within either one or three years after closing is error.

The District Court's statement that "[t]he *Gilbert* court did not address . . . whether a borrower must file a lawsuit to complete rescission when the lender fails to respond to the notification of rescission, and if so, what statute of limitations applies to filing the lawsuit" is simply wrong. (JA at 59). In *Gilbert* (and in similar Extended Rescission cases), a borrower is forced to file a lawsuit precisely <u>because</u> the lender has refused to voluntarily unwind the transaction. *See Gilbert*, 678 F.3d at 274 (noting that after receiving plaintiffs' notice of rescission, the lender responded that it reviewed the file and found "no basis to conclude that there were any material disclosure errors that would give rise to an extended right of rescission" and therefore refused to rescind the transaction). *Gilbert*'s holding applies squarely to the facts of this case—the only difference is that Mr. Baker exercised his right of rescission <u>earlier</u> than in most cases.

Aside from being inconsistent with the law of the Circuit as stated in *Gilbert*, the District Court's rationale for finding Mr. Baker's Complaint was

untimely filed is unfounded.  The District Court expressed concern that an

"unlimited statute of limitations" would "place a perpetual cloud on title to the

property in these cases."  (JA at 58).  First, *Gilbert* does not result in an "unlimited

statute of limitations."  The statute of limitations in section 1635(f) extinguishes

the right to rescind after three years.  *Gilbert*, 678 F.3d at 278 ("[T]he three-year

limitation in 15 U.S.C. § 1635 concerns the extinguishment of the right of

rescission and does not require borrowers to file a claim for the invocation of that

right.") (citing *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998)).  A borrower

exercises that right not by filing suit, but by mailing notice of rescission.  *Id.*  Nor

does *Gilbert* result in perpetual clouds on title.  Lenders necessarily have notice of

a borrower's exercise of a right to rescind within three years and ignore it at their

peril.

Because the District Court's dismissal of Mr. Baker's claims as untimely

filed directly contradicts controlling Fourth Circuit law, this Court must reverse the

decision.

> B.    BECAUSE APPELLANT'S CLAIMS FOR RESCISSION AND TO
>        QUIET TITLE ARE TIMELY, THE DISTRICT COURT HAS
>        JURISDICTION OVER HIS STATE LAW CLAIM.

Based on its dismissal of Mr. Baker's claims raising a federal question, the

District Court declined to extend supplemental jurisdiction to Mr. Baker's state law

claim for breach of the duty of good faith and fair dealing.  (JA at 59-60).  Under

28 U.S.C. § 1367, federal courts must extend supplemental jurisdiction to state law claims that form the same case or controversy as claims that give the court original jurisdiction. 28 U.S.C. § 1367(a). Here, Mr. Baker asserted a claim for breach of the duty of good faith and fair dealing based on Countrywide's actions in inducing Mr. Baker into the subject transaction and refusing to honor his rescission in violation of TILA. (JA at 14-15).

Section 1367 provides that a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). A reversal of the District Court's dismissal of Mr. Baker's claims arising out of TILA will remove this as a basis for declining to extend supplemental jurisdiction to his state law claim, and the District Court will be required to extend supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).[2] Therefore, all of Mr. Baker's claims must survive a motion to dismiss under Rule 12(b)(6), and this Court should reverse the District Court's decision to the contrary.

---

[2] To the extent that this Court may consider the issue, Mr. Baker's state law claim is timely because it arises out of the Note and Deed of Trust, which were signed under seal. (JA at 14). The statute of limitations applicable to actions on a sealed instrument is 10 years under N.C. Gen. Stat. § 1-47(2).

## VIII. CONCLUSION

Based on the foregoing arguments, this Court should reverse the District

Court's decision dismissing Appellant's claims.

Respectfully submitted this 24th day of March, 2014.

LAW OFFICE OF JAMES C. WHITE, P.C.

/s/ Michelle M. Walker
James C. White, N.C. Bar No. 31859
Michelle M. Walker, N.C. Bar No. 41664
P.O. Box 16103
Chapel Hill, NC 27516
(919) 246-4676
(919) 246-9113 fax
mwalker@jcwhitelaw.com
*Attorneys for Appellant*

27

# IX.  ADDENDUM

464 Fed.Appx. 634

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Ninth Circuit Rule 36-3. (Find CTA9 Rule 36-3)

United States Court of Appeals,
Ninth Circuit.

Willie J. CAUSEY, Jr., Plaintiff—Appellant,

v.

U.S. BANK NATIONAL ASSOCIATION, Trustee for Lehman Brothers–Structured Asset Investment Loan Trust Sail 2006–BNC3, Defendant—Appellee.

No. 10–56021.    |    Argued and Submitted Dec. 7, 2011.    |    Filed Dec. 29, 2011.

**Synopsis**

**Background:** Mortgagor brought action against mortgagee to rescind mortgage refinancing loan pursuant to Truth in Lending Act (TILA). Mortgagee moved for summary judgment. The United States District Court for the Central District of California, Jacqueline H. Nguyen, J., granted summary judgment. Mortgagor appealed.

**Holding:** The Court of Appeals held that mortgagor was entitled to rescission, and automatically triggered TILA default sequence that required mortgagee to release lien before mortgagor was obligated to tender borrowed funds.

Reversed and remanded.

**Attorneys and Law Firms**

**\*635**  Nathan Fransen, Fransen & Molinaro, LLP, Corona, CA, for Plaintiff–Appellant.

Sung–Min Christopher Yoo, Esquire, AlvaradoSmith, APC, Santa Ana, CA, for Defendant–Appellee.

Appeal from the United States District Court for the Central District of California, Jacqueline H. Nguyen, District Judge, Presiding. D.C. No. 2:08–cv–03460–JHN–CW.

Before: B. FLETCHER, SILVERMAN, and WARDLAW, Circuit Judges.

**Opinion**

## MEMORANDUM [*]

Willie J. Causey, Jr. appeals the district court's grant of summary judgment for defendant U.S. Bank National Association on his Truth in Lending Act claim to rescind his mortgage refinancing loan with the defendant. Reviewing de novo, we reverse and remand. *See Blue Lake Rancheria v. United States,* 653 F.3d 1112, 1115 (9th Cir.2011).

It is undisputed that the plaintiff effectively invoked his absolute right to rescind the transaction within three business days of the loan closing. It is also undisputed that the lender ignored the plaintiff's rescission notice and proceeded to fund the loan. The

district court erred in ruling that the plaintiff was required to tender the borrowed funds to the defendant before the defendant was obligated to release its lien. In an uncontested rescission as here, the default sequence under the Act requires the creditor to release its lien before the consumer must tender. *See* 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(2)–(3).

Although the district court is authorized to modify the default sequence, that authority ends once rescission is accomplished. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(4). In a case where the creditor disputes the consumer's asserted ground for rescission, rescission is not accomplished until a court determines that the consumer had the right to rescind. *See Yamamoto v. Bank of N.Y.,* 329 F.3d 1167, 1172 (9th Cir.2003). But in a case where the creditor acquiesces in the consumer's notice of rescission or fails to respond within the 20–day response period, rescission is accomplished automatically. *See id.*

Here, the undisputed facts show that the plaintiff timely mailed his rescission notice, and the defendant failed to dispute it within 20 days—thus accomplishing rescission automatically and triggering the default sequence under the regulations.

On remand, the district court should order that the defendant release its lien on the plaintiff's home and determine the amount that the plaintiff must then tender to the defendant. Also, the plaintiff may present evidence to support his assertion that he attempted to tender in 2006 but the defendant did not timely take possession of the tender he offered.

**REVERSED AND REMANDED.**

**Parallel Citations**

2011 WL 6881787 (C.A.9 (Cal.))

Footnotes

\*      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

---

**End of Document** © 2013 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw**Next** © 2013 Thomson Reuters. No claim to original U.S. Government Works.    2

## X. CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*6,405*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: March 24, 2014                     /s/ Michelle M. Walker
                                          *Counsel for Appellant*

## XI. CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 24th day of March, 2014, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> D. Kyle Deak
> TROUTMAN SANDERS, LLP
> 434 Fayetteville Street, Suite 1900
> Raleigh, North Carolina  27601
> (919) 835-4133
>
> *Counsel for Appellees*

I further certify that on this 24th day of March, 2014, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court.

/s/ Michelle M. Walker
*Counsel for Appellant*