RECORD NO. 14-1118

In The

# United States Court of Appeals

## For The Fourth Circuit

# BRIAN C. BAKER,

*Plaintiff – Appellant*,

**v.**

# BANK OF AMERICA, N. A., successor in interest to Countrywide Bank FSB; US BANK NATIONAL ASSOCIATION, as trustee for the benefit of the LXS 2007-16N trust fund; SPECIALIZED LOAN SERVICING LLC,

*Defendants – Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

––––––––––––––

## BRIEF OF APPELLEES

––––––––––––––

**D. Kyle Deak**
TROUTMAN SANDERS LLP
**434 Fayetteville Street, Suite 1900**
**Raleigh, North Carolina  27601**
**(919) 835-4133**

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __14-1118__    Caption: __Brian C. Baker v. Bank of America, N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Bank of America, N.A., successor in Interest to Countrywide Bank, FSB (BOA)__
(name of party/amicus)

_____

 who is _____Apellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO


2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Bank of America Corporation owns 100% of NB Holdings Corporation, which owns 100% of BAC North America Holding Company, which owns 100% of BANA Holding Corporation, which owns 100% of Bank of America, N.A.


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☑ YES ☐ NO
      If yes, identify all such owners:
      Bank of America Corporation owns 100% of NB Holdings Corporation, which owns 100% of BAC North America Holding Company, which owns 100% of BANA Holding Corporation, which owns 100% of Bank of America, N.A.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
       If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
       If yes, identify any trustee and the members of any creditors' committee:

Signature: _/s/ D. Kyle Deak_____    Date: _____2/20/2014_____

Counsel for: _Bank of America, N.A._____

# CERTIFICATE OF SERVICE
*****************************

I certify that on __February 20, 2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

James C. White
Michelle M. Walker
LAW OFFICE OF
JAMES C. WHITE P.C.
4819 Emperor Blvd., Suite 400
Durham, NC 27703

_/s/ D. Kyle Deak_____        _____2/20/2014_____
        (signature)                                    (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 14-1118          Caption: Brian C. Baker v. Bank of America, N.A., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Specialized Loan Servicing LLC
(name of party/amicus)


who is _____ Apellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                    ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Specialized Loan Servicing LLC (SLS) is a limited liability company formed in the State of Delaware.  SLS is wholly-owned by Specialized Loan Servicing Holdings LLC, a company whose ultimate parent is Computershare Limited, a publicly traded company on the Australian exchange.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☑ YES ☐ NO
      If yes, identify all such owners:
      Specialized Loan Servicing LLC (SLS) is a limited liability company formed in the State of Delaware.  SLS is wholly-owned by Specialized Loan Servicing Holdings LLC, a company whose ultimate parent is Computershare Limited, a publicly traded company on the Australian exchange.

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)      ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?      ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ D. Kyle Deak                          Date:        2/20/2014

Counsel for:  Specialized Loan Servicing LLC

# CERTIFICATE OF SERVICE
****************************

I certify that on   February 20, 2014   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

James C. White
Michelle M. Walker
LAW OFFICE OF
JAMES C. WHITE P.C.
4819 Emperor Blvd., Suite 400
Durham, NC 27703

/s/ D. Kyle Deak                                              2/20/2014
     (signature)                                                (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1118    Caption: Brian C. Baker v. Bank of America, N.A., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

U.S. Bank National Association, as Trustee for the Benefit of the LXS 2007-16N Trust Fund (U.S. Bank)
(name of party/amicus)

_____

who is _____Apellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☑ YES ☐ NO

2.    Does party/amicus have any parent corporations? ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      U.S. Bank understands that it is named solely as Trustee of the Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-16N Trust.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
      If yes, identify all such owners:
      U.S. Bank understands that it is named solely as Trustee of the Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-16N Trust.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: __/s/ D. Kyle Deak_____     Date: _____2/20/2014_____

Counsel for: __U.S. Bank, as Trustee_____

# CERTIFICATE OF SERVICE
*****************************
I certify that on __February 20, 2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

James C. White
Michelle M. Walker
LAW OFFICE OF
JAMES C. WHITE P.C.
4819 Emperor Blvd., Suite 400
Durham, NC 27703

__/s/ D. Kyle Deak_____          _____2/20/2014_____
(signature)                                    (date)

- 2 -

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................. iii

STATEMENT OF THE CASE ................................................................1

SUMMARY OF THE ARGUMENT .......................................................4

ARGUMENT .........................................................................................5

    A.    Plaintiff's Notice of Rescission, without more, does not automatically void the Interest of Defendants ......................................5

        i.    Plaintiff's understanding of automatic rescission would give TILA claimants "the right to simply walk away with a windfall . . . without any further obligation" .........................13

        ii.    Plaintiff's understanding of automatic rescission is wholly inconsistent with § 1635(b)'s vesting of equitable discretion in courts to decide whether and how to effect rescission .................................................................16

        iii.    Plaintiff's understanding of § 1635(b) is textually foreclosed because automatic rescission would obviate any claim against a lender for damages ....................................18

        iv.    TILA provides for an award of attorneys' fees and costs, which serves as incentive for lenders to comply with rescission notices....................................................................19

    B.    Plaintiff's Rescission Claim is barred by the Statute of Limitations.............................................................................20

    C.    The District Court properly dismissed Plaintiff's Attendant State Law Claims.........................................................................23

CONCLUSION ...................................................................................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Mortg. Network, Inc. v. Shelton*,
  No. 3:05cv83, 2006 U.S. Dist. LEXIS 23180,
  2006 WL 909415 (W.D.N.C. Apr. 6, 2006)..................................................14

*Am. Mortg. Network, Inc. v. Shelton*,
  486 F.3d 815 (4th Cir. 2007) ...............................................................*passim*

*Anderson Bros. Ford v. Valencia*,
  452 U.S. 205, 101 S. Ct. 2266, 68 L. Ed. 2d 783 (1981) ...............................6

*Bradford v. HSBC Mortg. Corp.*,
  838 F. Supp. 2d 424 (E.D. Va. 2012) ............................................................9

*Causey v. U.S. Bank Nat. Ass'n*,
  464 Fed. Appx. 634 (9th Cir. 2011) ...........................................................12

*Dewsnup v. Timm*,
  502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992) ...............................3

*FDIC v. Hughes Dev. Co.*,
  938 F.2d 889 (8th Cir. 1991) ................................................................. 16-17

*Gilbert v. Residential Funding LLC*,
  678 F.3d 271 (4th Cir. 2012) ...............................................................*passim*

*Iroanyah v. Bank of Am., N.A.*,
  851 F. Supp. 2d 1115 (N.D. Ill. 2012).........................................................16

*Johnson v. Long Beach Mortgage Loan Trust 2001-4*,
  451 F. Supp. 2d 16 (D.D.C. 2006).............................................................21

*Large v. Conseco Fin. Servicing Corp.*,
  292 F.3d 49 (1st Cir. 2002).............................................................8, 11, 12

*Ray v. Citifinancial*,
    228 F. Supp. 2d 664 (D. Md. 2002)...................................................................9

*Textron, Inc. v. Comm'r*,
    336 F.3d 26 (1st Cir. 2003)........................................................................5

*United States v. Ron Pair Enters., Inc.*,
    489 U.S. 235, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) .............................6

*WMC Mortg. LLC v. Baker*,
    No. 10-3118, 2012 WL 628003 (E.D. Pa. 2012)..........................................12

*Yamamoto v. Bank of N.Y.*,
    329 F.3d 1167 (9th Cir. 2003) ....................................................................16

## STATUTES

15 U.S.C. § 1601, *et seq.*...........................................................................3

15 U.S.C. § 1635................................................................................18

15 U.S.C. § 1635(a) .......................................................................2, 4

15 U.S.C. § 1635(b) ...............................................................*passim*

15 U.S.C. § 1635(f).................................................................21, 22, 23

15 U.S.C. § 1640................................................................................18

15 U.S.C. § 1640(e) ...........................................................21, 22, 23

28 U.S.C. § 1367..............................................................................23

## RULE

Fed. R. Civ. P. 12(b)(6)..............................................................................3

## <u>OTHER AUTHORITY</u>

S. Rep. No. 368, 96th Cong., 2d Sess. 29 (1980), *reprinted in*
1980 U.S.C.C.A.N. 236 ............................................................................17

# <u>STATEMENT OF THE CASE</u>[1]

In or about 2005, Plaintiff Brian C. Baker ("Plaintiff" and/or "Baker") purchased a home at 1324 Colonial Club Road, Wake Forest, North Carolina (the "Property"). [Joint Appendix "JA" at 7]. In or about May, 2007, Plaintiff applied for a loan with Countrywide. [JA at 8]. On May 25, 2007, Countrywide presented a Good Faith Estimate ("GFE") for a refinance of Plaintiff's existing 2005 loan in the principal amount of $645,337.00, with a 30-year term, and a fixed interest rate of 4.875%. [*Id.*]. At closing on June 13, 2007, Plaintiff alleges that Countrywide switched the terms of the refinance and substituted a note with different terms than the GFE. [*Id.*]. Specifically, Plaintiff alleges that the note presented on June 13, 2007 was an adjustable rate note in the principal amount of $640,000.00. [*Id.*]. Further, Plaintiff alleges that the Truth-in-Lending Disclosure presented at closing on June 13, 2007 set out an annual percentage rate of 7.616%, and a finance charge that was more than double what had previously been presented. [*Id.*]. Despite these changes, Plaintiff alleges that he raised concerns, but, nonetheless, went along with the closing believing that the terms of the documents he was signing, which included the note and a deed of trust, were different than the terms the parties had agreed to. [JA at 9].

---

[1] Defendants accept the facts as alleged in the Complaint as true only for purposes of their Motion to Dismiss filed in this case.

1

On June 15, 2007, Plaintiff mailed a signed rescission notice and letter to Countrywide. Plaintiff alleges that Countrywide received the rescission notice and letter on June 18, 2007, but has since refused to rescind the transaction under 15 U.S.C. § 1635(a). [*Id*.]. Plaintiff alleges that he further wrote letters in August, 2007 and October, 2007 detailing his efforts to obtain rescission and Countrywide's failure to respond to his request. [JA at 10].

Plaintiff alleges that he thereafter began making payment to avoid foreclosure, and sought replacement financing. [*Id*.]. Plaintiff alleges that in March, 2008, he applied for a loan with First Citizens Bank to repay the loan, but that Countrywide demanded a prepayment penalty at that time to repay the loan. [*Id*.].

Plaintiff next alleges that subsequent to the above events, in or about April 2009 Countrywide merged into and with Bank of America, on or about January 14, 2010, Countrywide assigned its interests in the deed of trust to U.S. Bank, and in or about February 2010 Bank of America, as servicer of the loan, began foreclosure proceedings that were opposed by Plaintiff based upon his belief that he had rescinded the loan in 2007. [JA at 11]. To date, the foreclosure sale of the Property has not occurred.

On April 23, 2010, Plaintiff filed for bankruptcy protection. [*Id*.]. Plaintiff finally alleges that Defendants have refused to cancel the deed of trust for the

2

Property without receiving payment under the note, even though Plaintiff received a discharge in the bankruptcy case.  [JA at 12].[2]

On or about February 7, 2013, Plaintiff filed his Complaint against Defendants Bank of America, N.A., successor in Interest to Countrywide Bank, FSB, U.S. Bank National Association, as Trustee for the Benefit of the LXS 2007-16N Trust Fund ("U.S. Bank"), and Specialized Loan Servicing, LLC ("SLS") (hereinafter "Defendants") alleging claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*

By final judgment entered January 27, 2014, the district court granted Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This appeal ensued thereafter.

---

[2] To the extent that Plaintiff believes that his bankruptcy petition nullified the lien status of the deed of trust in the property at issue in this case, he is mistaken.  A discharge in a Chapter 7 case only serves to extinguish personal liability.  It, in essence, makes the debt obligation nonrecourse.  It does not, however, serve as a blanket cancellation of a valid lien interest, such as here, in a property and the ability of the creditor to seek recourse with regard to that property (an *in rem* proceeding), separate and apart from pursuing a personal action against the discharged debtor.  A review of the bankruptcy docket does not reveal that the lien was avoided.  As such, there can be no claim by Plaintiff for Defendants alleged failure to cancel the lien of the deed of trust after the discharge. *See generally Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773 (1992) (the Supreme Court held that the creditor's lien passed through the bankruptcy proceedings unaffected).

## SUMMARY OF THE ARGUMENT

From Plaintiff's Complaint, it is without question that at the loan closing on June 13, 2007, Plaintiff raised concerns regarding the terms of the refinance, but, nonetheless, went along with the closing believing that the terms of the documents he was signing, which included the note and a deed of trust, were different than the terms the parties had agreed to.

There is also no question for purposes of this matter, and accepting all facts as alleged in the Complaint as true, that on June 15, 2007, Plaintiff alleges that he sent his notice of intent to rescind the refinance transaction. Moreover, there is no dispute that as of March, 2008, again as alleged for purposes of this matter, Countrywide refused to accept payment to repay the proceeds disbursed to Plaintiff by Countrywide in June, 2007. Taking all of these facts as true, there can be, finally, no dispute that Plaintiff's Complaint filed on February 7, 2013, nearly six (6) years after loan closing, and nearly five (5) years after Plaintiff alleges failure to accept repayment, is time barred by the applicable statute of limitations.

This case posits two fundamental questions: (1) if a borrower sends a notice of rescission during the three day period provided for under 15 U.S.C. § 1635(a), does that automatically void any security interest of the creditor or must further action be taken by the borrower to complete rescission, and (2) if so, what statute of limitations applies to enforcement of rescission rights.

4

Defendants contend, and the district court agreed, that Plaintiff's failure to seek judicial action for nearly six (6) years following the lender's failure to rescind the loan after notice of intent to rescind foreclosed Plaintiff's ability to prosecute this action. Plaintiff's notice of exercise of his right to rescind did not automatically void any security interest of Defendants in the property and Plaintiff was required to timely file an action to enforce his rescission rights after the lender failed to rescind the loan. Because the Plaintiff did not timely seek to enforce his rescission rights and complete a rescission of the loan, the district court did not err in dismissing Plaintiff's claims as untimely and refusing to exercise supplemental jurisdiction over the remaining state law claims. The decision of the district court should be affirmed.

## ARGUMENT

A.   Plaintiff's Notice of Rescission, without more, does not automatically void the Interest of Defendants

This Court's interpretation of statutes and regulations begins with their text. *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 277 (4th Cir. 2012) (*citing Textron, Inc. v. Comm'r*, 336 F.3d 26, 31 (1st Cir. 2003)). "The Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written." *Id*. In most cases,

a textual reading will be dispositive.  *Id.* (*citing United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). Furthermore, "absent some obvious repugnance to the statute, the . . . regulation implementing [TILA] should be accepted by the courts."  *Id.* (*citing Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219, 101 S. Ct. 2266, 68 L. Ed. 2d 783 (1981)).

Here, we are primarily concerned with just one statute, 15 U.S.C. § 1635(b). Section 1635(b) provides that:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635(b).

In this case, Plaintiff first argues that rescission was automatic when he sent his notice of rescission within three (3) days of loan closing, and his notice

automatically voided any interest that Defendants may have had in this matter. Plaintiff further argues, in essence, that he does not need an acknowledgment from the lender or a finding from a court regarding the availability of his right to rescind-it is absolute, and Defendants' security interest automatically became void under the terms of the statute upon delivery of his notice. Plaintiff contends, at base, that rescission is automatic.

Plaintiff bases his claim on the first sentence of § 1635(b), which states in pertinent part that: "When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." (emphasis added). As the district court held, however, and consistent with the holdings of this Court and numerous federal courts throughout the country, Plaintiff's claim of automatic rescission and the reading of such into the statute is misplaced. The holding of the district court should be affirmed.

As the district court recognized, there is a distinction between exercising the right to rescind, and actual rescission. Plaintiff's attempt to parse the use of the

word "such" in the first sentence of § 1635(b) is unavailing.[3]  In addressing the

issue of rescission under TILA, this Court has stated:

> We must not conflate the issue of whether a borrower has exercised her right
> to rescind with the issue of whether the rescission has, in fact, been
> completed and the contract voided. The former is the concern of § 1635(f)
> and Regulation Z, and a borrower exercises her right of rescission by merely
> communicating in writing to her creditor her intention to rescind. **To
> complete the rescission and void the contract, however, more is
> required. Either the creditor must "acknowledge[ ] that the right of
> rescission is available" and the parties must unwind the transaction
> amongst themselves, or the borrower must file a lawsuit so that the
> court may enforce the right to rescind**.

*Gilbert v. Residential Funding LLC*, 678 F.3d 271, 277 (4th Cir. 2012) (citing

*American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007)

(quoting, in turn, *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st

Cir. 2002)) (emphasis added)).

---

[3] In fact, to accept Plaintiff's reading of the statute would lead to an essential
rewriting of the statute to read: when an obligor **exercises his right to rescind**
under subsection (a) of this section …such interest… becomes void upon such "**an
exercise of his right to**" rescission. If Congress had intended this meaning, it
could have and would have written the statute in this manner.  Instead, the statute
as written provides that the security interest becomes void upon "such a
rescission," meaning that rescission in the true and complete legal form must be
accomplished prior to voiding of the interest.  As noted *infra* in *Ray*, rescission
does not mean an annulment that is definitively accomplished by unilateral
pronouncement.  Plaintiff's attempt to interject words into the statute would have
that effect, and would create an unintended consequence that does not comport
with the plain meaning of the statute.  To that end, Plaintiff's interpretation of the
Federal Reserve Board's Commentary, which contradicts the district court's
interpretation of the same, is misplaced and cannot be used to support Plaintiff's
position.

Said another way, "[u]ntil a judicial determination that a TILA claimant is entitled to rescission issues, the claimant has 'only advanced a claim seeking rescission' if the lender denies that a rescission right exists. Put differently, notice of a borrower's intent to rescind does not automatically entitle the borrower to rescission, but instead merely begins 'an on-going process consisting of a number of steps' by which it is determined (i) whether the right to rescission is available to the borrower, and if so, (ii) how that right will be enforced." *Bradford v. HSBC Mortgage Corp.*, 838 F. Supp. 2d 424, 434 (E.D. Va. 2012) (internal citations omitted). As the court in *Bradford* continued and concluded, "the text and structure of § 1635(b) and the Fourth Circuit's decision in *Shelton* point persuasively to the conclusion that a borrower's notice to  a lender of the borrower's intent to rescind does not, without more, trigger the lender's obligation to effect rescission." And while *Bradford* spoke in terms of the three (3) year Extended  Rescission right, the application of these principles in the context of three (3) day and three (3) year rescission rights is supported by (1) this Court's holding in *Gilbert*, which did not distinguish in its language between the three (3) day and three (3) year rescission rights, (2) as well as a definitional understanding of the law of rescission.

As the court in *Ray v. Citifinancial*, 228 F. Supp. 2d 664, 667-68 (D. Md. 2002) explained:

9

Within the meaning of the law, "rescission" does not mean an annulment that is definitively accomplished by unilateral pronouncement. Rather, it contemplates a remedy that restores the *status quo ante*. If a party has a legal or equitable right to annul a transaction, he may do so, but only upon returning any benefit he has received. *See, e.g.*, *Washington Homes, Inc. v. Interstate Land Dev. Co., Inc.*, 281 Md. 712, 382 A.2d 555, 563 (1978); *Lazorcak v. Feuerstein*, 273 Md. 69, 327 A.2d 477, 481-82 (1974); *Funger et al. v. Mayor and Council of Town of Somerset et al.*, 244 Md. 141, 223 A.2d 168, 173 (1966) (dicta); *Norton v. Young*, 3 Me. 30 (1824); *Conner v. Henderson*, 15 Mass. 319 (1818).  It is clear to me that it is in that sense that Congress used "rescission" when enacting TILA.

Section 1635(a) and the first sentence of section 1635(b), upon which Ray relies, must be read in conjunction with the second, third, and fourth sentences of section 1635(b). Those three sentences modify conventional rescission doctrine (that contemplates a simultaneous restoration of the *status quo ante)* by requiring a creditor to take certain actions before becoming entitled to a tender from the debtor. **However, if Congress had not contemplated that a court has the power to condition annulment of the transaction upon a debtor's return of that which he has received, its enactment of the sequencing provisions of section 1635(b) would have been nonsensical. Why should Congress have established a procedure for restoring the *status quo ante* if a debtor could avoid the obligations the procedure imposes upon him simply by asserting that his notice of rescission under section 1635(a) voided the creditor's security interest and eviscerated any rights that it might have other than as an unsecured creditor?**

Surely, Congress's establishment in the second, third, and fourth sentences of section 1635(b) of a procedure for restoring the *status quo ante* was not intended to be an empty gesture. Just as surely, Congress did not intend that if faced with a debtor's refusal to return the benefit he had received in defiance of the statutory mandate, a court of equity would be powerless to grant an effective remedy. Since these are the implications of Ray's interpretation of the language of section 1635(a) and the first sentence of section 1635(b), his interpretation must fail.

(emphasis added).

Addressing the near identical argument that Plaintiff asserts with regard to automatic rescission, the First Circuit in *Large* (which was quoted by this Court in *Shelton*, which was, in turn, cited by this Court in *Gilbert*) succinctly summarized the fallacy of such an argument as follows:

> In support of their theory of automatic rescission, the Larges point to 15 U.S.C. § 1635(b), which states that "when an obligor exercises his right to rescind under [§ 1635(a)], he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." In addition, the TILA provides that, "within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." 15 U.S.C. § 1635(b). Likewise, Federal Reserve Board Regulation Z stipulates that "when a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge." 12 C.F.R. § 226.23(d)(1).

> The Larges misread these provisions. **<u>Neither the statute nor the regulation establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract</u>**. Section 1635(b) states that, "when an obligor exercises his right to rescind," the creditor's security interest "becomes void." The natural reading of this language is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined.  If a lender disputes a borrower's purported right to rescind, the designated decision maker -- here an arbitrator -- must decide whether the conditions for rescission have been met. Until such decision is made, the Larges have only advanced a claim seeking rescission…If the TILA language on which the Larges rely created an exception to this well-established rule of law, a borrower could rescind a transaction without any statutory justification simply by alleging that the statutory requirements for rescission had been met. That is an untenable proposition.

11

*Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002) (emphasis added).

Following on this logic, and consistent with the law of rescission, this Court has adopted "the majority view of reviewing courts that unilateral notification of cancellation does not automatically void the loan contract." *Shelton*, 486 F.3d at 821.[4]

There are strong and substantiated reasons for these holdings:

1.     First, Plaintiff's understanding of automatic rescission would give TILA claimants "the right to simply walk away with a windfall . . . without any further obligation," a result certainly not intended by Congress under both the three (3) day <u>and</u> three (3) year rescission rights.  *Shelton*, 486 F.3d at 818;

2.     Second, Plaintiff's understanding of automatic rescission is wholly inconsistent with § 1635(b)'s vesting of equitable discretion in courts to decide whether and how to effect rescission under either the three (3) day and three (3) year rescission rights;

---

[4] Plaintiff's reliance on *WMC Mortg. LLC v. Baker*, No. 10-3118, 2012 WL 628003 (E.D. Pa. 2012) is misplaced, as *WMC* recognizes, but fails to follow this Court's precedent in *Shelton*.  So too, the Ninth Circuit in *Causey v. U.S. Bank Nat. Ass'n*, 464 Fed. Appx. 634 (9th Cir. 2011) noted that its disposition "was not appropriate for publication and is not precedent."  Both cases are unpublished and non-binding in this Circuit.  *Causey* and *WMC*, moreover, as the district court recognized, fail to fully address and explain the distinction between exercising the right to rescind and full rescission, as contemplated under 15 U.S.C. § 1635(b).

3.      Third, Plaintiff's understanding of § 1635(b) is textually foreclosed because automatic rescission would obviate any claim against a lender for damages for failure to honor a rescission notice.  That is so because if rescission was accomplished by notice, there could be no argument that the lender failed to rescind, and no actual damages could flow from failure to rescind; and

4.      Fourth, TILA provides for an award of attorneys' fees and costs, which serves as incentive for lenders to comply with rescission notices and begin the process of completing a full rescission, contrary to the conclusory allegations of Plaintiff that absent automatic rescission borrowers would be left without proper recourse.

   i.  Plaintiff's understanding of automatic rescission would give TILA claimants "the right to simply walk away with a windfall . . . without any further obligation"

In *American Mortgage Network, Inc. v. Shelton*, a borrower obtained a loan to refinance an existing loan on his primary residence.  To obtain the loan, the borrower gave the lender a security interest in the residence, but shortly thereafter, the borrower sent the lender a notice of his intent to rescind the transaction. The lender responded by indicating that it "was prepared to unwind the transaction in accordance with TILA, upon receipt of confirmation from [the borrower] that he was prepared to return the net loan proceeds."  *Shelton*, 486 F.3d at 818.  Being unable to tender all proceeds, the borrower told the lender that the lender "was

13

required under TILA to release its security interest on the house immediately without a specific agreement . . . to return the net loan proceeds." *Id.* The lender brought an action against the borrower "seeking modification of the TILA rescission procedures and an order declaring its full compliance with TILA." The borrower "counterclaimed for declaratory relief and monetary damages" under TILA. *Id.* On summary judgment, the district court (i) granted the lender's claim for a declaratory judgment that it had complied with TILA and (ii) dismissed the borrower's TILA claims with prejudice. *See Am. Mortg. Network, Inc. v. Shelton*, No. 3:05cv83, 2006 U.S. Dist. LEXIS 23180, 2006 WL 909415 (W.D.N.C. Apr. 6, 2006).

On appeal, this Court rejected the borrower's argument that § 1635(b) "require[es a lender] to unconditionally release the security interest within 20 days of notification of cancellation" irrespective of the borrower's "admitted inability to tender the balance due on the loan[.]" *Shelton*, 486 F.3d at 820. A secured loan, this Court reasoned, is rendered void only when a creditor voluntarily voids the security interest or a court orders rescission. *Id.* at 821. To that end, this Court concluded that a borrower's "unilateral notification of cancellation does not automatically void the loan contract" under TILA. *Id.* This Court continued that to hold contrary would give TILA claimants "the right to simply walk away with a

windfall . . . without any further obligation," a result certainly not intended by Congress. *Id.* at 820.

Ultimately, this Court concluded that the lender had "fully complied with all the requirements of TILA in connection with this loan" and affirmed the district court's judgment in all respects. *Id.* at 822.

Following the holding in *Shelton*, and the policy considerations of Congress in enactment of TILA, Plaintiff's argument would place lenders in the position of an unsecured creditor, without recourse as to the property which previously secured the debt, and without assurance of repayment from the debtor. The risks and issues attendant with such reasoning are highlighted by the facts of this case where the Plaintiff has received a discharge in bankruptcy and the lender's only recourse would be an *in rem* remedy with regard to the property. As such, accepting Plaintiff's rationale would lead to the possible result of a borrower being personally discharged from liability, and a lender being itself "discharged" from being able to collect its debt against either the property (because its security rights were automatically rescinded) or the person (because of a discharge in bankruptcy). Such a result is clearly at odds with the intent of Congress in the TILA, and should not be upheld. In short, Congress could have not intended that § 1635(b) was intended to work at cross-purposes: by, on the one hand, keeping a security interest intact even after a borrower notices his intent to rescind, but, on

15

the other hand, also requiring that a lender void the security interest and return all loan proceeds. This reasoning applies equally in the context of the three (3) day and three (3) year rescission rights.

> ii. Plaintiff's understanding of automatic rescission is wholly inconsistent with § 1635(b)'s vesting of equitable discretion in courts to decide whether and how to effect rescission

As the district court noted, Plaintiff's understanding that § 1635(b) mandates automatic rescission once a lender receives a borrower's notice of intent to rescind is wholly inconsistent with § 1635(b)'s vesting of equitable discretion in courts to decide whether and how to effect rescission. [JA at 55, *citing Iroanyah v. Bank of Am., N.A.*, 851 F. Supp. 2d 1115, 1124-25 (N.D. Ill. 2012)].

Section 1635(b) expressly gives a district court the power to deny rescission or modify the procedures by which rescission is affected. Section 1635(b) states that "[t]he procedures prescribed by this subsection shall apply **except when otherwise ordered by a court**." (emphasis added). It is well-settled that a district court may "in exercising its powers of equity . . . den[y] rescission or base[] the unwinding of the transaction on the borrowers' reasonable tender of the loan proceeds" depending on the particular circumstances of the case. *Shelton*, 486 F.3d at 821; *accord Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th Cir. 2003) (describing equitable considerations relevant to the determination whether to modify § 1635(b)'s default procedures in a given case); *see also FDIC v. Hughes*

16

*Dev. Co.*, 938 F.2d 889, 890 (8th Cir. 1991) ("TILA generally provides that the creditor shall perform first (*i.e.*, return monies paid by the debtor and release its security interest); however, the Act gives courts discretion to devise other procedures, 15 U.S.C. § 1635(b), including conditioning rescissions upon the debtor's prior return of the principal.").

Similar to the argument noted above, Congress could not have intended that § 1635(b) was intended to work at cross-purposes: by, on the one hand, being a set of default procedures a court may equitably alter after a borrower's notice of intent to rescind and, at the same time, require a lender to effect rescission immediately upon receiving such notice, in which case there would be nothing for the Court to equitably alter.

This reasoning also comports with congressional intent that "the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act." S. Rep. No. 368, 96th Cong., 2d Sess. 29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 236, 265. And, as above, this reasoning applies equally in the context of the three (3) day <u>and</u> three (3) year rescission rights.

   iii. Plaintiff's understanding of § 1635(b) is textually foreclosed because automatic rescission would obviate any claim against a lender for damages

15 U.S.C. § 1640 provides, in pertinent part, that "any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title … is liable to such person" is such amounts as further delineated in the statute.  In essence, § 1640 provides for civil liability and money damages against a lender that fails to honor a notice of intent to rescind.  Section 1640 speaks in terms of liability for failure to comply with any "any requirement imposed under this part, including any requirement under section 1635 of this title."  Section 1640, however, does not differentiate between three (3) day and three (3) year rescission rights under § 1635.  Plaintiff's understanding of automatic rescission would, therefore, completely eviscerate civil liability under § 1640.  That is, if a loan was automatically rescinded upon the mere provision of a notice of intent to rescind, how could there be damages associated with a failure to comply with rescission rights under § 1635?  Under the rationale of Plaintiff, rescission would have been completed, the security interest void as a matter of law, and Plaintiff could not complain about anything the lender had not done – that is, there could be no argument that a security interest exists that was not voided by the lender, and no corresponding claim for failure to void a security interest.  And, under the theory of automatic rescission, the lender would not have a security

18

interest in the property for which to seek recourse in the event the borrower fails to reciprocally tender the loan proceeds.[5]

>       iv.    TILA provides for an award of attorneys' fees and costs, which serves as incentive for lenders to comply with rescission notices

In his brief, Plaintiff asserts that "a decision from this Court determining that a borrower must bring a lawsuit to complete a rescission exercised…would send an unfortunate message to lenders…." and would shift to borrowers enforcement of TILA, "many of whom would not have the financial means to front the costs of federal lawsuit." [Brief, p. 21]. Plaintiff's "parade of horrors" argument, however, was addressed and dismissed by the district court. As the district court correctly noted, "TILA provides for attorneys fees in cases where, as here, the lender violates TILA by failing to respond to a timely notice of rescission." [JA at 56]. As such, lenders face the potential of having to pay fees of the borrower for not properly honoring invocation of rescission rights, and statutorily shifting the financial burden of a court proceeding to the lender allows borrowers to seek relief in the event, as alleged here, that a notice of intent to rescind was not honored. But, having to resort to federal court to enforce the provisions of TILA, as was

---

[5] One may argue, well the lender can get a judgment and then place a lien on the property. But, what happens if during the intervening months, or conceivably years, between the time of filing suit and judgment the borrower obtains another loan and that lender obtains a first lien position with regard to the property? If the security interest was automatically void, the lien of the subsequent lender would have first priority.

contemplated by Congress by its inclusion of fees shifting provisions and the provision of civil money damages (as discussed above), supports the understanding that more is needed for rescission beyond the mere notice of intent to rescind.

In short, Plaintiff's argument that his notice of rescission, without more, constituted an automatic cancellation of any interest Defendants have with regard to the property at issue in this case does not hold muster when evaluated in the context of the plain meaning of the statute, Congressional intent, and analysis of the caselaw.  As such, Plaintiff's arguments are without merit, and the decision of the district court should be affirmed.

B.    Plaintiff's Rescission Claim is barred by the Statute of Limitations

Plaintiff argues that since his rescission was automatic, there is no applicable statute of limitations that bars his Complaint.[6]  Simply, Plaintiff contends that he can file suit whenever he wishes, whether, as here, six (6) years, or conceivably

---

[6] In this case, there is no dispute as to the timeliness of Plaintiff's exercise of his right to rescind.  The dispute concerns the timeliness of filing a lawsuit to enforce that right when it purportedly has not been honored by the lender.  To that end, Plaintiff's argument that his notice essentially tolled any statute of limitations for filing an action to enforce his rights is misplaced and should be summarily dismissed.

Moreover, it would fly in the face of reason to say on the one hand that completion of rescission requires more than just unilateral notice (as noted above), and on the other hand say that there is no time period by which the other requirements of rescission, such as filing a lawsuit so that the court may enforce the right to rescind, need to be initiated.

sixty (60) years after loan closing to seek to enforce his rescission rights. Plaintiff, again, is equally wrong and misplaced in this argument.

From the Complaint we know that Plaintiff's claims arise out of the original lender's actions on the closing date of June 13, 2007, and the original lender's failure to honor the rescission notice and letter sent on June 15, 2007. Under these facts, the limitations period on Plaintiff's rescission claim began to run on or about July 5, 2007 (20 days after sending the rescission notice, *see* note 6, *infra*). Plaintiff filed this lawsuit on February 7, 2013, nearly six (6) years after his claim accrued. As explained herein, Plaintiff's claims fail as a matter of law as being untimely, and the holding of the district court should be affirmed.

In addressing this issue, the district court noted that while TILA does not specifically set forth a statute of limitation for filing a lawsuit seeking to enforce rescission under its provisions, courts have taken two divergent paths: (1) they have applied the three (3) year statute of repose provided for in § 1635(f) as an outside time period in which to file an action, or (2) they have applied the one (1) year statute of limitations on claims for civil damages under § 1640(e). *See, e.g.*, *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 40 (D.D.C. 2006). Under 15 U.S.C. § 1635(f), "an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the

sale of the property." And under 15 U.S.C. § 1640(e), there is a one-year statute of limitations for filing a suit once a violation of TILA has occurred.

This Court in *Gilbert* clarified that in this Circuit the three (3) year statute of repose provided for in § 1635(f) applied only to the notice of rescission; the Court, however, did not address the time period for filing a lawsuit to complete rescission when the lender fails to respond to the notification of rescission. The *Gilbert* Court held that a borrower need only to exercise its right to rescind during the three (3) year statute of repose provided for in § 1635(f), and need not file a lawsuit during the three (3) year statute of repose provided for in § 1635(f) in order to exercise that right. Thus, in *Gilbert*, this Court addressed only the timeliness of filing a notice of rescission, not the timeliness of filing a lawsuit to enforce the notice of rescission that is not acknowledged or accepted – the issue presented by this case.

Having addressed this Court's holding in *Gilbert*, and recognizing the divergence of opinions across federal courts on which statute of limitations to apply in this situation, the district court ultimately held that it need not decide which statute of limitation would apply because under any theory, Plaintiff having filed suit six (6) years after the accrual of his claim violated <u>any</u> statute of limitations that has been applied –save an <u>unlimited</u> statute of limitations that has never been applied, and of which the district court was not willing to accept. [JA

at 58].[7]  The holding and reasoning of the district court are sound and supportable. The fact is that Plaintiff well knew for years that the exercise of his rescission rights were at issue and not being honored, yet he did nothing for nearly six (6) years to seek to remedy that issue.  Allowing an unbounded time period to enforce rescission would leave lenders exposed to potentially unbounded contingent liabilities, and place a perpetual cloud on title, hindering the ability of subsequent purchasers to obtain clear title.  [JA at 58].

In short, Plaintiff's arguments with regard to the statute of limitations are without merit, and the decision of the district court should be affirmed.

C.     The District Court properly dismissed Plaintiff's Attendant State Law Claims

Defendants can see no error in the district court's refusal to exercise supplemental jurisdiction under 28 U.S.C. § 1367 when the federal claims which supported the basis for jurisdiction were dismissed.  Defendants submit that the district court's ruling on these issues was proper in light of the dismissal of the federal claims and does not, itself, warrant reversal of the decision of the district court.

---

[7] Under § 1640(e), the limitations period on Plaintiff's rescission claim began to run on or about July 5, 2007 (20 days after sending the rescission notice), and ended one year later.  Plaintiff filed this lawsuit on February 7, 2013, nearly six (6) years after his claim accrued.  Under § 1635(f), an outside three year limitation would have barred Plaintiff's claim in 2010.

## <u>CONCLUSION</u>

The district court properly dismissed Plaintiff's Complaint and, respectfully, this Court should affirm the ruling of the district court.

Respectfully submitted this the 25th day of April, 2014.

TROUTMAN SANDERS LLP

By:  /s/ D. Kyle Deak
　　　D. Kyle Deak
　　　N.C. State Bar No. 35799
　　　Attorneys for Defendants/Appellees
　　　434 Fayetteville Street, Suite 1900
　　　Raleigh, North Carolina 27601
　　　Telephone: (919) 835-4133
　　　Facsimile: (919) 829-8725
　　　kyle.deak@troutmansanders.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*6,305*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>April 25, 2014</u>               <u>/s/ D. Kyle Deak</u>
                                                          *Counsel for Appellees*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 25th day of April, 2014, I caused this Brief of

Appellees to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

> James C. White
> Michelle M. Walker
> Law Office of James C. White, PC
> Post Office Box 16103
> Chapel Hill, North Carolina  27516
> (919) 246-4676
>
> *Counsel for Appellant*

I further certify that on this 25th day of April, 2014, I caused the required

copies of the Brief of Appellees to be hand filed with the Clerk of the Court.

> /s/ D. Kyle Deak
> *Counsel for Appellees*