RECORD NO. 14-1118

In The

# United States Court of Appeals
### For The Fourth Circuit

## BRIAN C. BAKER,

*Plaintiff – Appellant*,

**v.**

## BANK OF AMERICA, N. A., successor in interest to Countrywide Bank FSB; US BANK NATIONAL ASSOCIATION, as trustee for the benefit of the LXS 2007-16N trust fund; SPECIALIZED LOAN SERVICING LLC,

*Defendants – Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

———————

## REPLY BRIEF OF APPELLANT

———————

James C. White
Michelle M. Walker
LAW OFFICE OF JAMES C. WHITE, PC
Post Office Box 16103
Chapel Hill, North Carolina  27516
(919) 246-4676

*Counsel for Appellant*

# I.    TABLE OF CONTENTS

**Page**

II.   TABLE OF AUTHORITIES ...................................................................... iii

III.  SUMMARY OF THE ARGUMENT ............................................................1

IV.   ARGUMENTS ...........................................................................................2

　　1.   STANDARD OF REVIEW ...................................................................2

　　2.   DISCUSSION OF THE ISSUES ..........................................................3

　　　　A.   APPELLEES    IGNORE    THE    DISTINCTION
　　　　　　BETWEEN    UNCONDITIONAL    THREE-DAY
　　　　　　RESCISSION    AND    EXTENDED    CONDITIONAL
　　　　　　RESCISSION ...................................................................................3

　　　　　　i.    Appellees cite no relevant authority that addresses
　　　　　　　　absolute three-day rescission in support of their
　　　　　　　　position ..................................................................................3

　　　　　　ii.   Appellees do not adequately address this crucial
　　　　　　　　distinction ..............................................................................5

　　　　　　iii.  Appellees' remaining arguments are unavailing .............7

　　　　　　　　a.   Automatic voiding of a security interest
　　　　　　　　　　upon an absolute, three-day rescission would
　　　　　　　　　　only leave a lender as an unsecured creditor
　　　　　　　　　　in the—hopefully—rare instance that the
　　　　　　　　　　lender improperly disburses too early ...................8

　　　　　　　　b.   A court's ability to alter the default
　　　　　　　　　　procedures of section 1635 is limited in
　　　　　　　　　　cases of unconditional rescissions within
　　　　　　　　　　three days of closing .............................................9

c.    Applying the rescission procedures of section 1635 as written is not at all inconsistent with TILA's statutory damages provision ...............................................................10

d.    TILA's fee-shifting provision alone does not adequately protect a borrower's absolute right to rescind ......................................................11

B.    APPELLEES FLOUT THIS COURT'S DECISION IN *GILBERT* ...................................................................13

V.    CONCLUSION...........................................................15

VI.    CERTIFICATE OF COMPLIANCE

VII.    CERTIFICATE OF FILING AND SERVICE

## II.    TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Mortgage Network, Inc. v. Shelton*,
    486 F.3d 815 (4th Cir. 2007) ....................................................... 3, 4, 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................2

*Bradford v. HSBC Mortg. Corp.*,
    838 F. Supp. 2d 424 (E.D. Va. 2012).......................................... 3, 4

*Causey v. U.S. Bank Nat. Ass'n*,
    464 Fed. Appx. 634 (9th Cir. 2011) ...............................................5

*Gilbert v. Residential Funding LLC*,
    678 F.3d 271 (4th Cir. 2012) ...............................................*passim*

*Large v. Conseco Fin. Servicing Corp.*,
    292 F.3d 49 (1st Cir. 2002)........................................................ 3, 4

*Ray v. CitiFinancial, Inc.*,
    228 F. Supp. 2d 664 (D. Md. 2002) ............................................. 3

*WMC Mortg. LLC v. Baker*,
    No. 10–3118, 2012 WL 628003 (E.D. Pa. 2012) ...........................5

**STATUTES**

15 U.S.C. § 1635 ...........................................................................3, 6, 9, 10

15 U.S.C. § 1635(a) .............................................................................6

15 U.S.C. § 1635(b) ......................................................................*passim*

15 U.S.C. § 1635(f)..................................................................................................13

15 U.S.C. § 1640.............................................................................................10, 13

15 U.S.C. § 1640(e) .....................................................................................13, 14

## REGULATIONS

12 C.F.R. § 226.23(a)(2).............................................................................10, 11

12 C.F.R. § 226.23(d) ................................................................................10, 11

12 C.F.R. § 226.23(d)(1)...................................................................................6

12 C.F.R. pt. 226...................................................................................6, 10, 11

12 C.F.R. § 1026.23(c).................................................................................8, 12

### III.    SUMMARY OF THE ARGUMENT

The Truth-in-Lending Act ("TILA") sets out two distinct rights of rescission for consumers: (1) an absolute, unconditional right to rescind within three days of closing for any reason or no reason –a "cooling-off period" and (2) an extended right to rescind up to three years after closing due to deficiencies in a lender's TILA disclosures.  The majority of cases concern the second, conditional right of rescission.  But the distinction between the self-executing absolute right and the right to rescind for cause is critical to properly enforcing the statutory language of TILA and the protections it grants to consumers.  As demonstrated by their arguments, this distinction is seemingly irrelevant to Appellees.

TILA states in plain language that a security interest is void upon a borrower's exercising his right to rescind.  It may be appropriate for courts to intervene (as TILA permits) and condition the voiding of a security interest in cases of extended rescission, when a court must determine if disclosures were in fact deficient and funds have been properly disbursed.  But a holding that courts can alter the voiding of a security interest when a consumer exercises an absolute right to rescind in the three-day cooling off period, as Appellees argue, would mean that a lender could unilaterally impose conditions on a consumer's absolute right to rescind simply by ignoring the rescission and disbursing early in violation

of federal regulations. Such a result would effectively rewrite TILA and eliminate the cooling off period.

Mr. Baker's claims are timely, whether because the security interest has been void for years and Mr. Baker may at any time seek to clear the cloud on his title created by Appellees' recorded Deed of Trust, or because Mr. Baker timely exercised his right to rescind by <u>mailing</u> the Notice of Rescission within three business days after closing pursuant to this Court's decision in *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 277 (4th Cir. 2012). In their brief, Appellees unavailingly attempt to distort *Gilbert*'s holding and offer no support for their contention that some unspecified statute of limitations outside of TILA applies to Mr. Baker's claims.

## IV.    ARGUMENTS

## 1.    STANDARD OF REVIEW

This Court reviews a district court's decision granting a motion to dismiss *de novo*, and views the facts in the light most favorable to the non-prevailing party. *Gilbert*, 678 F.3d at 274. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**2.    DISCUSSION OF THE ISSUES**

    A.    APPELLEES IGNORE THE DISTINCTION BETWEEN UNCONDITIONAL THREE-DAY RESCISSION AND EXTENDED CONDITIONAL RESCISSION.

        i.    <u>Appellees cite no relevant authority that addresses absolute three-day rescission in support of their position.</u>

Each of the cases cited by Appellees for the proposition that "notice of a borrower's intent to rescind does not automatically entitle the borrower to rescission" were decided in the context of an extended rescission, where the inadequacy of the lender's TILA disclosures at closing was a prerequisite to the availability of a right to rescind and funds had been properly disbursed. *See Gilbert*, 678 F.3d at 274 (borrowers claimed TILA violations and requested rescission nearly three years after closing); *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 817 (4th Cir. 2007) (borrower rescinded when notified by lender of discrepancies in TILA disclosures one month after closing); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 51 (1st Cir. 2002) ("It is the conditional, three-year right of rescission that is at issue in this case."); *Bradford v. HSBC Mortg. Corp.*, 838 F. Supp. 2d 424, 428-29 (E.D. Va. 2012) ("[T]he conclusion reached here—that a borrower's notice of rescission does not itself require the lender to rescind under § 1635—applies only where, as here, the notice is sent outside of TILA's 'three-day cooling-off period' that begins after the closing of the transaction."); *Ray v. CitiFinancial, Inc.*, 228 F. Supp. 2d 664, 666 (D. Md. 2002) (borrower pursued

rescission six months after closing based on discrepancies between TILA disclosures and proof of claim lender filed in borrower's bankruptcy case).

As discussed in detail in Mr. Baker's principal brief, in those cases, courts alter TILA's default procedures (which provide that any security interest becomes void upon exercising a right to rescind) to condition cancellation of the security interest upon the borrower's repayment of any loan proceeds. *See* 15 U.S.C. § 1635(b) ("The procedures prescribed by this subsection shall apply except when otherwise ordered by a court."). The logic for this is clear, since "'[o]therwise, a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any.'" *Shelton*, 486 F.3d at 821.

That is not the case in the context of rescissions within the three-day cooling off period because the right to rescind in such cases is not contingent on demonstration of TILA violations—it is absolute. Appellees rely heavily on two cases that explicitly acknowledge the significance of the distinction between these types of rescission, even though Appellees refuse to. In *Bradford*, the court made clear that its holding "does not extend to cases in which the borrower sends a rescission notice within the initial three-day period, as the right to rescind in such cases is not contingent on the borrower's demonstration that the required TILA disclosures were not given at closing." *Bradford*, 838 F. Supp. 2d at 428-29; *see also Large*, 292 F.3d at 51 ("The statute grants the borrower an <u>unconditional</u> right

4

of rescission for the first three days following the consummation of the transaction. It also grants a right of rescission if the creditor fails to deliver certain forms and to disclose certain information.") (emphasis added).

>        ii.    Appellees do not adequately address this crucial distinction.

Those courts that have analyzed the factual situation presented in this case have consistently found the applicable security interest to be void upon the borrower's mailing a notice of rescission within the three-day cooling off period. *See Causey v. U.S. Bank Nat. Ass'n*, 464 Fed. Appx. 634, 635 (9th Cir. 2011); *WMC Mortg. LLC v. Baker*, No. 10–3118, 2012 WL 628003 at *16 (E.D. Pa. 2012). Appellees attempt to dispose of these cases by simply stating in a footnote that the "cases are unpublished and non-binding in this Circuit." Appellees' Brief at 12 n.4. That is insufficient in a case of first impression. Mr. Baker cites those cases because they address the issue at hand and their reasoning is persuasive— Appellees do not address the substantive analysis of those cases.

The closest Appellees come to explaining why the reasoning of *Causey* and *WMC Mortgage* should not apply here is by making the conclusory assertion that those cases "fail to fully address and explain the distinction between exercising the right to rescind and full rescission." Appellees' Brief at 12, n.4. That argument fails as well.

The default procedures of section 1635 do not distinguish between exercising the right to rescind and full rescission. Section 1635(b) states that "When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." 15 U.S.C. § 1635(a). The District Court and Appellees argue that this provision draws a distinction between <u>exercising</u> a right to rescind and full <u>rescission</u>, but federal regulations implementing this provision use the phrase "exercise a right to rescind" interchangeably with the term "rescind."

Regulation Z provides that "[w]hen a consumer **<u>rescinds</u>** a transaction, the security interest giving rise to the right of rescission becomes void . . . ." 12 C.F.R. § 226.23(d)(1) (emphasis added). The Federal Reserve Board's Official Commentary on TILA providing the official staff interpretation of this section of Regulation Z states that "[a]ny security interest giving rise to the right of rescission becomes void when the consumer **<u>exercises the right</u> of rescission**." 12 C.F.R. pt. 226, Supp. I ¶ 23(d)(1) (emphasis added).[1]

---

[1] Appellees' assertion that Mr. Baker's "interpretation" of this provision contradicts the District Court's interpretation and "cannot be used to support [his] position" is simply wrong and, frankly, nonsensical. *See* Appellees' Brief at 8 n.3. First, the District Court cited a different provision of the Federal Reserve Board's Commentary that does not address the legal status of a security interest upon exercise of a right of rescission, but rather addresses the process of reflecting that legal status of record. (JA at 55). Second, this provision is explicit and not subject to "interpretation."

Any distinction between "exercising" a right to rescind and completion of "rescission" only becomes relevant when a borrower advances a claim for rescission that may require a court's determination that rescission is in fact available in that case due to deficiencies in the lender's disclosures. *See Shelton*, 486 F.3d at 821 ("The natural reading of [§ 1635(b)] is that the security interest **becomes void** when the obligor **exercises a right to rescind** that **is available** in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined."). Appellees' argument is circular: they argue that the cases involving absolute three-day rescissions do not address the difference between <u>exercising</u> a right to rescind and full <u>rescission</u>, but that difference only makes sense in the context of extended rescissions that require a determination that rescission is available.

> iii.    <u>Appellees' remaining arguments are unavailing.</u>

Appellees make four enumerated arguments against immediate voiding of a security interest upon exercise of an absolute right to rescind within three days of closing.  None of them is persuasive.

7

### a.    Automatic voiding of a security interest upon an absolute, three-day rescission would only leave a lender as an unsecured creditor in the—hopefully—rare instance that the lender improperly disburses too early.

Appellees first argue that automatic voiding of a security interest upon mailing a notice of rescission within three days after closing "would place lenders in the position of an unsecured creditor." Appellees' Brief at 15. This argument fails to consider that a lender would only be in the position of an unsecured creditor upon a borrower's exercise of his absolute right to rescind in the cooling off period if the lender violates federal regulations by disbursing prior to expiration of the cooling off period, as Countrywide did here.

Regulation Z places the burden on the creditor to ensure a loan has not been rescinded before disbursing the loan proceeds, stating that "[u]nless a consumer waives the right of rescission . . . no money shall be disbursed other than in escrow . . . until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded." 12 C.F.R. § 1026.23(c). Recognizing that TILA provides for the automatic voiding of a security interest upon proper notification of rescission within three days after closing will have no effect on a lender's ability to be repaid in the vast majority of such cases because the lender will not have disbursed any funds.

8

### b.    A court's ability to alter the default procedures of section 1635 is limited in cases of unconditional rescissions within three days of closing.

Appellees next point to the TILA provision that grants courts equitable discretion to modify the default procedures of section 1635. *See* Appellees' Brief at 16. As discussed in detail above and in Mr. Baker's principal brief, the rationale for modifying the default sequence does not apply to cases of automatic rescission within three days of closing.

A decision by this Court that the default procedures of section 1635 may be modified in cases of automatic rescissions as well as extended rescissions would completely rewrite the statute such that the statute as written (and as interpreted by the Federal Reserve Board) would never apply. If Congress intended that in every rescission, a borrower must tender proceeds before the lender's security interest becomes void, then why not write the statute that way?

Altering the default procedures would also gut the effectiveness of the three-day cooling off period granted by TILA, since a lender could then unilaterally impose conditions on a consumer's absolute right to rescind simply by ignoring the rescission and disbursing early in violation of federal regulations, confident that the court will require the borrower to repay the proceeds (which were likely disbursed to a third party) before it loses its security interest. When the borrower is unable to tender because the funds are not in his possession, the lender will have

effectively solidified the transaction that the borrower attempted to rescind by exercising what is supposed to be his <u>absolute</u>, <u>unconditional</u> right to rescind.

The <u>only way</u> that a lender could be in the position of needing the court to condition voiding of the security interest upon repayment of proceeds in cases of cooling off period rescission is by ignoring the borrower's rights and violating federal regulations by disbursing too early. A lender that has done so should not then be able to invoke the court's equitable powers to modify the sequence that has been clearly set out by Congress. Again, absent intervention from a court on equitable grounds, a security interest becomes void immediately upon mailing a notice of rescission. *See* 15 U.S.C. § 1635(b); 12 C.F.R. §§ 226.23(a)(2), (d); 12 C.F.R. pt. 226, Supp. I ¶ 23(d)(1).

### c. Applying the rescission procedures of section 1635 as written is not at all inconsistent with TILA's statutory damages provision.

Appellees next make the puzzling argument that applying the default procedures of section 1635 to void a security interest upon proper notice that a borrower is exercising his absolute right to rescind will somehow "completely eviscerate civil liability under § 1640." Appellees' Brief at 18. Section 1640 provides for money damages when a creditor "fails to comply with any requirement imposed under this part." 15 U.S.C. § 1640. Lenders can become liable for damages for all sorts of things apart from failing to honor a notice of

rescission, including failing to properly disclose material terms of the credit they offer.

Rescission and money damages are two remedies available under TILA that borrowers may pursue simultaneously or independently. In this case, setting aside statute of limitations issues, Mr. Baker could have pursued statutory money damages for Countrywide's violation of TILA by fraudulently swapping the terms of the loan it had originally offered Mr. Baker with significantly less favorable terms at closing, in addition to rescinding the transaction because he disliked the substituted terms. Appellees' argument is without merit.

> **d.      TILA's fee-shifting provision alone does not adequately protect a borrower's absolute right to rescind.**

Appellees finally argue that TILA's fee-shifting provision supports their argument because it shows that Congress intended for borrowers to have to go to court to enforce their absolute right to rescind in the three-day cooling off period. Appellees' Brief at 19-20. Nothing could be further from the truth.

TILA's statutory and regulatory framework makes clear that upon a borrower's mailing a notice of rescission within three days of closing, any security interest created by the transaction becomes void. 15 U.S.C. § 1635(b); 12 C.F.R. §§ 226.23(a)(2), (d); 12 C.F.R. pt. 226, Supp. I ¶ 23(d)(1). To protect a borrower's absolute right of rescission in those three days and ensure that a borrower is able to

effectively rescind a transaction without the need for court intervention, Regulation Z requires lenders to wait until the absolute rescission period has expired prior to disbursing funds.  12 C.F.R. § 226.23(c).  If these federal regulations do not deter a lender from disbursing early, it is hard to imagine that a fee-shifting provision will, especially if lenders feel confident that a borrower will be required to repay proceeds that have likely gone to a third party before their security interest becomes void.

Both Appellees and the District Court question why Mr. Baker went through with closing in this case when he suspected that the terms presented at closing were not the terms he had been offered.  The answer is that <u>he was told he could rescind the transaction, no questions asked</u>, by mailing notice of rescission within three days, which is exactly what he did.  He was not told that he could rescind the transaction as long as Countrywide (which had fraudulently swapped the loan terms) agreed to it, otherwise he would have to hire a lawyer and file a federal lawsuit and find a way to repay the proceeds.  Because that is not what TILA envisions.  TILA places the burden on the lender to honor a borrower's absolute right of rescission, the burden is not on the borrower to ensure that a lender complies by filing a lawsuit.

12

B.    APPELLEES FLOUT THIS COURT'S DECISION IN *GILBERT*.

Despite the clear application of the Court's *Gilbert* decision to this case,

Appellees continue to maintain that Mr. Baker's claims are untimely.

Appellees first acknowledge that TILA provides two limitation periods: a

one-year limitation on claims for civil damages under § 1640 and a three-year

limitation on exercising a right to rescind.  *See* 15 U.S.C. §§ 1635(f), 1640(e).

Appellees go on to recognize that *Gilbert* held that a borrower must only exercise

his right to rescind by <u>sending notice of rescission</u> within the three-year limitations

period, which Mr. Baker indisputably did.  *See Gilbert*, 678 F.3d at 277.  Appellees

then wrongly claim that the *Gilbert* court did not address the "timeliness of filing a

lawsuit to enforce the notice of rescission that is not acknowledged or accepted."

Appellees' Brief at 22.  The *Gilbert* court squarely held that a borrower is not

required to file a lawsuit to enforce a notice of rescission within three years after

closing:

> In other words, the three-year limitation in 15 U.S.C. § 1635 concerns
> the extinguishment of the right of rescission and **does not require
> borrowers to file a claim for the invocation of that right**. Thus,
> **that the [plaintiffs] failed to <u>seek enforcement</u> of their right to
> rescind within the three years does nothing to take away from the
> fact that they exercised their right of rescission within that time
> period**.

*Id.* at 277-78 (emphasis added).  Of course, a lawsuit is only necessary if the notice

of rescission "is not acknowledged or accepted," so the type of lawsuit referred to

13

in *Gilbert* is the exact type of lawsuit presented here—there is no argument that the one-year limitations period of § 1640(e) applies simply because Countrywide refused to acknowledge Mr. Baker's rescission notice in violation of TILA, necessitating the need for this lawsuit to judicially enforce rescission.

Acknowledging, as they must, that *Gilbert* holds that TILA's three-year limitation period does not apply to lawsuits to enforce rescissions that are timely invoked but not honored, Appellees apparently argue that some other, unspecified limitations period outside of TILA must apply to such lawsuits. *See* Appellees' Brief at 22. But Appellees fail to point to any authority providing a different limitations period.

Appellees reiterate the concern that applying *Gilbert*'s holding will hinder lenders' ability to obtain clear title and will result in perpetual clouds on title, but that fear is unfounded. Appellees' Brief at 23. As a practical matter, the validity of a lender's security interest will necessarily be determined when title passes from the borrower who rescinded to a new purchaser, either through a private sale or through a foreclosure.

In the case of a private sale, a closing attorney will conduct a title search and require that any security interest reflected of record be addressed at closing, either by cancellation of the security interest (voluntarily or by court order) or by payment of the purportedly secured obligation. Otherwise, the recorded security

14

interest would remain attached to the property.  In the case of a foreclosure, the borrower would have an opportunity to (and likely would) contest the validity of the security interest purportedly giving rise to the lender's ability to foreclose, as Mr. Baker did here.  Even if a foreclosure sale proceeds, state laws will place a time limit on the ability of a borrower to contest the sale, so the ability of a borrower to challenge the validity of a security interest and resulting foreclosure sale would not be unlimited.  Title insurance and state foreclosure law provide for the certainty that Appellees contend will be in danger by properly applying *Gilbert*'s holding.  This Court correctly held that all TILA requires is that a borrower properly give <u>notice</u> of rescission within three years—a borrower is not required to file a lawsuit to enforce rescission within those three years.

The Court's *Gilbert* holding applies squarely to the facts of this case, and requires the conclusion that Mr. Baker's claims are timely because he timely exercised his right to rescind by mailing notice of rescission within three days after closing.

## V.    CONCLUSION

Based on the foregoing arguments and the arguments in Mr. Baker's principal brief, this Court should reverse the District Court's decision dismissing Appellant's claims.

Respectfully submitted this 9th day of May, 2014.

LAW OFFICE OF JAMES C. WHITE, P.C.

/s/ Michelle M. Walker
James C. White, N.C. Bar No. 31859
Michelle M. Walker, N.C. Bar No. 41664
P.O. Box 16103
Chapel Hill, NC 27516
(919) 246-4676
(919) 246-9113 fax
mwalker@jcwhitelaw.com
*Attorneys for Appellant*

# VI.   CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*3,568*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: May 9, 2014                        /s/ Michelle M. Walker
                                          *Counsel for Appellant*

## VII.   CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 9th day of May, 2014, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

D. Kyle Deak
TROUTMAN SANDERS, LLP
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina  27601
(919) 835-4133

*Counsel for Appellees*

I further certify that on this 9th day of May, 2014, I caused the required copies of the Reply Brief of Appellant to be hand filed with the Clerk of the Court.

/s/ Michelle M. Walker
*Counsel for Appellant*